ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Sep-08  14:40:10
60CV-21-5566
C06D17 : 24 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

**TIFFANY ROWAN**                                                           **PLAINTIFF**

**v.**                                        **60CV-21-____**

**PEPSICO, INC.,**                                                        **DEFENDANTS**
**NEW BERN TRANSPORTATION CORPORATION, and**
**BRYSON JURIEL BOWERS**

---

### COMPLAINT

---

COMES NOW the Plaintiff, Tiffany Rowan, and for her cause of action against

the Defendants, PepsiCo, Inc., New Bern Transportation Corporation ("New Bern"),

and Bryson Juriel Bowers, states as follows:

### THE PARTIES

1.      Rowan was a citizen and resident of Pulaski County, Arkansas at the time

of the motor vehicle collision hereinafter described.

2.      PepsiCo is foreign for-profit corporation registered to do business with the

Arkansas Secretary of State, who was engaged in interstate commerce and doing

business in Arkansas at the time of the motor vehicle collision hereinafter described.

3.      PepsiCo's registered agent for service of process is CT Corporation

System, 124 West Capitol Avenue, Ste 1900, Little Rock, AR 72201.

**EXHIBIT A**

4.      New Bern is a foreign for-profit trucking company registered to do business with the Arkansas Secretary of State who was engaged in interstate commerce and doing business in Arkansas at the time of the motor vehicle collision hereinafter described.

5.      New Bern's registered agent for service of process is CT Corporation System, 124 West Capitol Avenue, Ste 1900, Little Rock, AR 72201.

6.      New Bern's United States Department of Transportation number is 692947.

7.      PepsiCo is the parent company of New Bern.

8.      Bowers was a citizen and resident of Pulaski County, Arkansas at the time of the motor vehicle collision hereinafter described.

9.      Bowers resides 10930 Frenchmen Loop Apt. B, North Little Rock, Arkansas, 72113-7169.

## JURISDICTION AND VENUE

10.     This is an action arising from a motor vehicle collision that occurred in Pulaski County, Arkansas, when PepsiCo and New Bern, and Bowers committed separate acts of negligence resulting in the motor vehicle collision that is the subject of this action.

11.     This Court has general personal jurisdiction over PepsiCo and New Bern because they are registered to do business and are engaged in interstate commerce within the state of Arkansas.

12.     This Court has general personal jurisdiction over Bowers because he is a citizen and resident of the state of Arkansas.

13.     This Court has specific personal jurisdiction over PepsiCo and New Bern because both avail themselves of the opportunity to conduct business in Arkansas, their vehicles drive throughout Arkansas, they make representations in Arkansas, they market and advertise in Arkansas, and they promote and distribute services in Arkansas.

14.     This Court has specific personal jurisdiction over PepsiCo and New Bern, and Bowers because each Defendant committed tortious acts in Arkansas, which are hereinafter described.

15.     Therefore, this Court has jurisdiction over the parties hereto, jurisdiction of the subject matter hereof, and venue is proper.

## PRIOR MEDICAL HISTORY

16.     Rowan had treatment on four occasions from February 9, 2016 to March 2, 2016 for mild neck and back pain.

17.     Rowan was diagnosed with degeneration in her back based on her history as a heavy laborer over a period of years.

18.     Rowan rated her pain levels at a 1 on a 1-10 scale upon finishing treatment.

## FACTS

19.     Drivers keep others safe by following traffic safety rules.

3

20.     Companies keep others safe by supervising and training its drivers to follow traffic safety rules.

21.     The care exercised by Companies and its drivers must be directly proportional to the risk of injury to others.

22.     According to the Arkansas State Police, approximately 58,000 preventable motor vehicle collisions occur every year.

23.     On September 14, 2018, Bowers was in the scope of his employment with PepsiCo and New Bern when he turned off Cantrell Road onto Cedar Hill Road in Little Rock, Arkansas in a 2005 International Harvester/Navistar 850 tractor/semi-trailer.

24.     Upon turning onto Cedar Hill Road, Bowers saw the following road sign:





25.    Bowers turned onto Cedar Hill Road because he was following the global positioning system route his phone provided.

26.    Despite seeing the sign demonstrated in ¶ 24, Bowers continued south up Cedar Hill Road anyway, despite multiple places to turn around, shown below:



27.    The excessive weight of Bowers vehicle made it difficult for him to stop and turn around.

28.    PepsiCo and New Bern have a history of its vehicles travelling with excessive weight.

29.    After consciously disregarding the sign in ¶ 24, Bowers went up Cedar Hill Road in his truck.

30.    Before the truck fully jackknifed, Bowers stopped halfway up the hill in the middle Cedar Hill Road, and blocked both lanes of travel.

31.    Rowan was traveling north down Cedar Hill Road in a 2010 Toyota Highlander when she suddenly discovered Bowers' truck taking up both lanes of travel.

32.    Rowan slammed on her brakes so hard to avoid hitting Bowers' trailer it wedged her knees underneath the dashboard, and pinned her inside the vehicle.

33.    Rowan's corrective action successfully avoided a collision with Bowers' trailer, but Bowers kept backing his trailer up over the hood of Rowan's vehicle, as shown below:





34.    As Bowers kept backing his trailer over Rowan's vehicle, Rowan feared for her life as she thought Bowers' truck was going to run over her vehicle and crush her inside of it, as shown below:



35.     PepsiCo and New Bern failed to have adequate policies and procedures in place to train their truck driver employees of the importance of following traffic safety rules, specifically including road signs and other traffic control devices.

36.     PepsiCo and New Bern failed to properly train their truck driver employees to ensure traffic safety rules, specifically including road signs and other traffic control devices, are always followed.

37.     If PepsiCo and New Bern had policies and procedures in place for its drivers to follow traffic safety rules, they failed to properly apply such policies and procedures to Bowers.

38.     PepsiCo and New Bern's failure to have adequate policies and procedures for following traffic safety rules, or its failure to apply its policies and procedures to Bowers, resulted in Bowers determining his GPS route on his own.

39.     Had PepsiCo and New Bern had adequate policies and procedures for following traffic safety rules, or adequately applied its policies and procedures to Bowers, then the collision would not have occurred.

40.     Companies such as PepsiCo and New Bern properly supervise their truck driver employees by ensuring such drivers follow traffic safety rules while operating PepsiCo and New Bern's trucks.

41.     More specifically, companies such as PepsiCo and New Bern properly supervise their truck driver employees by ensuring such employees follow driving routes permitted for PepsiCo and New Bern's trucks.

42.     Companies such as PepsiCo and New Bern properly train their truck driver employees by ensuring such employees do not violate traffic safety rules while operating PepsiCo and New Bern's trucks.

43.     Companies such as PepsiCo and New Bern properly supervise their employees by performing adequate background checks to ensure their employees know how to safely operate motor vehicles.

44.     PepsiCo and New Bern failed to adequately train and supervise Bowers.

45.     Bowers knew or ought to have known that consciously disregarding the sign in ¶ 23 would probably result in injury, yet Bowers continued up Cedar Hill Road anyway despite multiple places to either turn around, or stop and call for help.

46.     The conduct of PepsiCo and New Bern, and Bowers gave rise to an appreciable risk of injury to others, including Rowan.

47.     At all times Rowan's vehicle was operated in a safe and prudent manner.

48.     The significant impact from the collision hurt Rowan and caused the injuries and damages to her described below.

49.     The collision caused $4,235.43 in damages to Rowan's vehicle.

50.     Rowan sought treatment three days after the collision for pain in her neck, mid-back, low back, shoulders, arms, and legs.

51.     A computerized radiographic mensuration analysis ("CRMA") report was performed on x-rays of Rowan's low back, which found ratable alterations of motion segment integrity at the L3 and L4 levels of Rowan's low back, and an abnormal alternation for motion segment integrity at the L2 level of Rowan's low back.

9

52.     A CRMA report was performed on x-rays of Rowan's neck, which found abnormal alterations of motion segment integrity from the C2 to C5 levels.

53.     CRMA is a generally accepted and scientifically valid method of assessing segmental motion (versus global motion) in an individual's spine.

54.     CRMA measures the distance between the bones of each motion segment, and how well an individual's ligaments are keeping the bones in place.

55.     A proton density-weighted MRI of Rowan's neck verified and confirmed the ligament damage shown on the CRMA reports, demonstrated Rowan had impaired normal cerebral spinal fluid ("CSF") flow, and showed partial empty sella turcica causing increased intracranial pressure due to the disturbance of CSF homeostasis.

56.     The CRMA report of Rowan's neck, as well as the neck MRI, demonstrated the wreck caused Rowan to have rotary misalignments at the C1-2 level in her neck.

57.     An MRI of Rowan's left knee showed damage to her patellar glide pathology, anterior cruciate ligament, and posterior cruciate ligament.

58.     An MRI of Rowan's low back found disc protrusions, among other things.

59.     The CRMA reports and the MRIs were clinically correlated to the symptoms Rowan experienced after the collision, and continues to experience to this day.

60.     As a result of the collision, Rowan was diagnosed with a 59% permanent impairment rating according to all of her medical information and the

combined values chart in the American Medical Association's *Guide to the Evaluation of Permanent Impairment* (5th ed. AMA Press 2001).

61.     Rowan's prior medical history described in ¶¶ 16-18 above predisposed Rowan to injury to a greater extent than another person.

62.     Rowan's pre-existing diagnoses did not limit her ability to work or live her life before the collision.

63.     After the collision, Rowan worked under duress after the collision, and eventually lost the ability to work.

64.     As a result of the collision, Rowan incurred approximately $22,015.51 for the treatment of her injuries in the past.

65.     As a result of the collision, Rowan will need at a minimum between $93,230 and $124,847.50 in future medical expenses.

66.     As a result of the collision, Rowan has lost the ability to earn at least $46,800 per year, which equates to $748,800 for the next 16 years of her working life up to age 67.

67.     As a result of the collision, Rowan has been unable to live her life without added inconvenience or diminution of physical vigor, which would not have occurred had the wreck never happened.

### COUNT I – NEGLIGENT SUPERVISION AND NEGLIGENT TRAINING

68.     The preceding paragraphs are incorporated herein by reference.

11

69.     Rowan's causes of action for negligent supervision and negligent training are not barred by *Elrod v. G&R Constr. Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982) as it and its progeny only hold when a defendant admits one theory of recovery applies, such as vicarious liability, concurrent claims for negligent *hiring*, negligent *retention*, and negligent *entrustment* may not be pursued.

70.     PepsiCo and New Bern knew, or through the exercise of ordinary care should have known, its employee truck drivers' failure to follow traffic safety rules would subject third parties to unreasonable risks of harm.

71.     From 2002 to 2015, Bowers was convicted of numerous traffic offenses in San Bernardino County, California.

72.     PepsiCo and New Bern knew or should have known about Bowers driving history in order to properly supervise and train him to follow applicable industry standards, and to follow traffic safety rules.

## DUTIES OWED BY PEPSICO AND NEW BERN

73.     PepsiCo and New Bern were required to follow the safety rule to perform an adequate background check on their employees to ensure their employees knew how to safely operate their trucks, for the safety of Rowan and others, both before and at the time of the collision.

74.     PepsiCo and New Bern were required to follow the safety rule to supervise their employees to ensure their employees were qualified to operate their trucks, for the safety of Rowan and others, both before and at the time of the collision.

75.     PepsiCo and New Bern were required to have written policies and procedures to train their truck driver employees to ensure compliance with traffic safety rules while operating their trucks, for the safety of Rowan and others, both before and at the time of the collision.

76.     PepsiCo and New Bern their employees required to follow the safety rule to train their truck driver employees to ensure compliance with traffic safety rules while operating their trucks, for the safety of Rowan and others, both before and at the time of the collision.

77.     PepsiCo and New Bern were required to follow the safety rule to supervise their truck driver employees to ensure compliance with traffic safety rules while operating PepsiCo and New Bern's trucks, for the safety of Rowan and others, both before and at the time of the collision.

78.     PepsiCo and New Bern were required to follow the safety rule to supervise their employees to ensure they were qualified to operate their trucks, for the safety of Rowan and others, both before and at the time of the collision.

79.     PepsiCo and New Bern were required to follow all applicable industry standards, customs, and practices in supervising and training their truck driver employees for the safety of Rowan and others, both before and at the time of the collision.

80.     PepsiCo and New Bern were required to follow the safety rule of using ordinary care in supervising and training their truck driver employees for the safety of Rowan and others, both before and at the time of the collision.

13

81.     PepsiCo and New Bern were not allowed to needlessly endanger Rowan
or anyone by violating one or more of the safety rules listed above.

## DUTIES VIOLATED BY PEPSICO AND NEW BERN

82.     At the time of the collision, PepsiCo and New Bern violated the safety rule
to perform an adequate background check on their employees to ensure their
employees knew how to safely operate their trucks, which needlessly endangered
Rowan and others.

83.     At the time of the collision, PepsiCo and New Bern violated the safety rule
to supervise their employees to ensure their employees were qualified to operate its
trucks, which needlessly endangered Rowan and others.

84.     At the time of the collision, PepsiCo and New Bern violated the safety rule
to have written policies and procedures to train their truck driver employees to ensure
compliance with traffic safety rules while operating their trucks, which needlessly
endangered Rowan and others.

85.     At the time of the collision, PepsiCo and New Bern violated the safety rule
to supervise their truck driver employees to ensure compliance with traffic safety rules
while operating PepsiCo and New Bern's trucks, which needlessly endangered Rowan
and others.

86.     At the time of the collision, PepsiCo and New Bern violated the safety rule
to supervise their employees to ensure their employees were qualified to operate their
trucks, which needlessly endangered Rowan and others.

14

87.    At the time of the collision, PepsiCo and New Bern violated the safety rule to train their truck driver employees to ensure compliance with traffic safety rules while operating their trucks, which needlessly endangered Rowan and others.

88.    At the time of the collision, PepsiCo and New Bern violated applicable industry standards, customs, and practices in supervising and training their truck driver employees, which needlessly endangered Rowan and others.

89.    At the time of the collision, PepsiCo and New Bern violated the safety rule of using ordinary care in supervising and training their truck driver employees, which needlessly endangered Rowan and others.

90.    At the time of the collision, PepsiCo and New Bern needlessly endangered Rowan and others violating one or more of the safety rules listed above.

91.    PepsiCo and New Bern's failure to supervise, train, and perform an adequate background check on Bowers resulted in the damages to Rowan described below.

## COUNT II – NEGLIGENCE

92.    The preceding paragraphs are incorporated herein by reference.

## DUTIES OWED BY BOWERS

93.    Bowers was required to follow the traffic safety rule of keeping a proper lookout for the safety of Rowan and others, both before and at the time of the collision.

94.    Bowers was required to follow the traffic safety rule of driving at a reasonable speed for the safety of Rowan and others, both before and at the time of the collision.

15

95.     Bowers was required to follow the traffic safety rule of keeping his vehicle under proper control for the safety of Rowan and others, both before and at the time of the collision.

96.     Bowers was required to follow the traffic safety rule to not recklessly drive his vehicle and/or indicate a wanton disregard for the safety of Rowan and others, both before and at the time of the collision.

97.     Bowers was required to follow the traffic safety rule of operating his vehicle in a manner to avoid careless and prohibited driving for the safety of Rowan and others, both before and at the time of the collision.

98.     Bowers was required to follow the traffic safety rule of driving his vehicle as nearly as practical entirely within a single lane, for the safety of Rowan and others, both before and at the time of the collision.

99.     Bowers was required to follow the traffic safety rule of not using a handheld wireless telephone for wireless interactive communication for the safety of Rowan and others, both before and at the time of the collision.

100.    Bowers was required to follow the traffic safety rule of obeying the instructions of a traffic control device for the safety of Rowan and others, both before and at the time of the collision.

101.    Bowers was required to follow the traffic safety rule of using ordinary care for the safety of Rowan and others, both before and at the time of the collision.

102.    Bowers was not allowed to needlessly endanger Rowan or anyone else by violating one or more the traffic safety rules listed above.

16

## DUTIES VIOLATED BY BOWERS

103.    At the time of the collision, Bowers violated the duty to follow the traffic safety rule of keeping a proper lookout, which needlessly endangered safety of Rowan and others.

104.    At the time of the collision, Bowers violated the duty to follow the traffic safety rule of driving at a reasonable speed for the safety of Rowan and others, which needlessly endangered safety of Rowan and others.

105.    At the time of the collision, Bowers violated the duty to follow the traffic safety rule of keeping his vehicle under proper control, which needlessly endangered safety of Rowan and others.

106.    At the time of the collision, Bowers was required to follow the traffic safety rule to not recklessly drive his vehicle and/or indicate a wanton disregard for the safety of Rowan and others.

107.    At the time of the collision, Bowers was required to follow the traffic safety rule of operating his vehicle in a manner to avoid careless and prohibited driving, which needlessly endangered safety of Rowan and others.

108.    At the time of the collision, Bowers was required to follow the traffic safety rule of driving his vehicle as nearly as practical entirely within a single lane, which needlessly endangered safety of Rowan and others.

109.    At the time of the collision, Bowers was required to follow the traffic safety rule of not using a handheld wireless telephone for wireless interactive communication, which needlessly endangered safety of Rowan and others.

17

110.    At the time of the collision, Bowers was required to follow the traffic safety rule of obeying the instructions of a traffic control device, which needlessly endangered safety of Rowan and others.

111.    At the time of the collision, Bowers was required to follow the traffic safety rule of using ordinary care, which needlessly endangered safety of Rowan and others.

112.    At the time of the collision, Bowers needlessly endangered Rowan and others by violating one or more the traffic safety rules listed above.

## IMPUTED VICARIOUS LIABILITY

113.    The preceding paragraphs are incorporated herein by reference.

114.    At all times material hereto, PepsiCo and New Bern were the employers of or directed the control of Bowers, and are liable for his negligent acts under the doctrine of respondeat superior, the law of agency, contract, DOT regulations, or other imputed vicarious liability principles.

115.    At all times mentioned herein, Bowers was acting during and within the course and scope of his agency, employment, joint employment, statutory employment, and/or under the joint and/or direct control of PepsiCo and New Bern.

## CAUSATION OF ROWAN'S INJURIES AND DAMAGES

116.    The preceding paragraphs are incorporated herein by reference.

117.    Causation is a foundational element for determining liability in negligence claims.

118.    Foreseeability of harm is a necessary element of causation.

18

119.     The injuries and damages sustained by Rowan, more particularly described below, were produced in a natural and continuous sequence from the violations of one or more safety rules listed above by PepsiCo and New Bern, and Bowers.

120.     The injuries and damages sustained by Rowan were a probable consequence from the violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers.

121.     The injuries and damages sustained by Rowan were more than merely possible from the violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers.

122.     The violation of one or more of the safety rules listed above by PepsiCo and New Bern, and Bowers created possibilities of danger so many and apparent as to entitle Roan to be protected against the violation of these safety rules, even if the harm was unintended.

123.     The harm to Rowan as a result of the violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers were within the range of probability as viewed by an ordinary person.

124.     PepsiCo and New Bern, and Bowers should have foreseen and anticipated that a violation of one or more safety rules listed above would constitute an appreciable risk of harm to others, including Rowan.

125.     The violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers was a substantial factor in, and worked together to cause the injuries and damages sustained by Rowan.

126.     If PepsiCo and New Bern, and Bowers had not violated one or more safety rules listed above, then the injuries and damages sustained by Rowan would not have occurred.

127.     The violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers combined to proximately cause indivisible injuries and damages sustained by Rowan, which make all Defendants liable for such injuries and damages, regardless of the relative degree of fault between them.

128.     Rowan's injuries in this case are not severable because she sustained indivisible injuries from the violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers.

## COMPENSATORY DAMAGES SUSTAINED BY ROWAN

129.     The measure of tort damages is based upon the purposes for which tort actions are maintainable; *i.e.*, to provide compensation, indemnity, or restitution for harms, to determine rights, deterrence of wrongful conduct, and to vindicate parties and deter retaliation or violent and unlawful self-help.

130.     The injuries and damages sustained by Rowan as a result of **the** violation of one or more safety rules listed above by PepsiCo and New Bern, and Bowers, include but are not limited to the following:

> A.     Permanent bodily injuries to Rowan's head, neck, knees, and other parts of her body, which is a life-

20

altering event causing her to lose the ability to enjoy a normal quality of life, and depriving her of the right to live her life in comfort and ease without added inconvenience or diminution of physical vigor;

B.  Aggravation of a condition(s) already then existing at the time of the collision that predisposed Rowan to injury to a greater extent than another person;

C.  Medical expenses incurred in the past and reasonably expected to be incurred in the future, and transportation expenses to obtain such medical treatment;

D.  Physical pain and suffering experienced in the past and reasonably expected to be experienced in the future;

E.  Loss of income in the past and reasonably expected to be experienced in the future;

F.  Loss of earning capacity due to permanent physical impairment from the injuries caused by the collision;

G.  Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes but is not limited to Rowan's loss of quality of life due to permanent injuries causing chronic pain that limits her activities;

H.  Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes PepsiCo and New Bern, and Bowers violating one of one or more safety rules that protect us all regardless of age, color or creed, which shattered Rowan's trust that everyone will follow the safety rules, and causes her to fear it will happen again due to this trust being broken; and

I.  The reasonable expense of any necessary help in Rowan's home in the past, and reasonably certain to be required in the future, as a result of Rowan's injuries.

21

## PUNITIVE DAMAGES

131.   In addition to the compensatory damages, Rowan should be allowed punitive damages to punish PepsiCo and New Bern for their conscious disregard in supervising and training Bowers in the operation of their trucks with reckless disregard of the consequences because PepsiCo and New Bern knew or should have known Bowers' driving would naturally and probably result in injury to others.

132.   In addition to the compensatory damages, Rowan should be allowed punitive damages against Bowers for consciously disregarding a traffic control device prohibiting two-axel vehicles from proceeding south up Cedar Hill Road with reckless disregard of the consequences because Bowers knew or should have known his conduct would naturally probably result in injury to others.

133.   The independent acts of PepsiCo and New Bern, and Bowers clearly and convincingly demonstrate a wanton, conscious, and reckless disregard for the rights and safety of others such that malice may be inferred.

134.   Punitive damages are also proper in this case to deter other companies and drivers from similar misconduct.

## AMOUNT OF DAMAGES

135.   Rowan's compensatory damages are in excess of the minimum amount required for federal diversity jurisdiction, and Rowan should be allowed punitive damages in excess of the minimum amount required for federal diversity jurisdiction.

136.   Thus, Rowan should be allowed a judgment against PepsiCo and New Bern, and Bowers in an amount to fully and fairly compensate her for each and every

element of compensatory damages sustained, and to punish and deter PepsiCo and

New Bern, and Bowers from similar conduct in the future.

## DEMAND FOR JURY TRIAL

137.   Rowan demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

138.   Rowan reserves the right to plead further upon completion of discovery to

state additional claims and to name additional parties to this action.

WHEREFORE, Rowan prays for the following:

A.   *Summons* be issued for PepsiCo and New Bern, and Bowers;

B.   Rowan be allowed a judgment against PepsiCo and New Bern, and Bowers following a jury trial of this action in an amount in excess required for federal diversity jurisdiction that will fully and fairly compensate her for all of the above-described compensatory damages, as well as punitive damages in an amount in excess required for federal diversity jurisdiction to punish and deter PepsiCo and New Bern, and Bowers for their above-described conduct to prevent PepsiCo and New Bern, and Bowers from hurting other members of the public in the future in the same or similar manner;

C.   Rowan recover all costs expended herein; and

D.   Rowan receive all other proper relief to which she may be entitled in the premises.

Respectfully Submitted,

Don P. Chaney, AR BIN 78027
S. Taylor Chaney, AR BIN 2010011
Chaney Law Firm, P.A.
P.O. Box 1405
Arkadelphia, AR  71923
Email:          don@chaneylaw.com
Email:          taylor@chaneylaw.com
Telephone: 870-246-0600
Telefax: 866-734-0971
www.chaneylaw.com

Attorneys for Plaintiff