| EXHIBIT |
| :---: |
| A |

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**TIFFANY ROWAN**                                                                          **PLAINTIFF**

**VS.**                                    **NO. 4:21-CV-00911-KGB**

**PEPSICO, INC.,**
**NEW BERN TRANSPORTATION CORPORATION**
**BRYSON JURIEL BOWERS**                                                        **DEFENDANTS**

### SEPARATE DEFENDANT NEW BERN TRANSPORT CORPORATION'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

New Bern Transport Corporation ("New Bern") hereby responds to Plaintiff's first set of interrogatories and requests for production. New Bern notes that the volume of Plaintiff's written discovery requests exceeds the scope of that contemplated under the Federal Rules of Civil Procedure and that, when considering the subparts, the very first 18 interrogatories exceed the limits imposed under Rule 33.

**INTERROGATORY NO. 1:** For all persons known to you to have knowledge of any facts relevant or material to the allegations in the Plaintiff's *Complaint*, or to your defenses alleged in your *Answer* to the Plaintiff's *Complaint*, or whom you otherwise intend to call to testify at the trial of this cause, please state such person's name, address, telephone number, the subject matter of their anticipated testimony, and whether such person has ever been convicted of a crime

that was punishable by death or imprisonment in excess of one year or a crime involving dishonesty or false statement.

NOTE: This Interrogatory specifically includes the identification of each person known or believed by you or your representatives to have been eyewitnesses to the collision described within Plaintiff's *Complaint*, and all non-privileged persons with whom you or your Driver discussed the collision, which occurred on September 14, 2018 between the parties.

**RESPONSE:** Objection to the extent that this interrogatory is premature, seeks information about crimes not readily known to New Bern, seeks a narrative or subject matter summary of anticipated testimony of non-expert witnesses, or seeks information on any possible consultant. Without waiving the objection, Plaintiff Rowan, Defendant Bowers, and investigating officer Darrell Atkins, Jr., Badge no. 38766, Little Rock Police Dept, 700 Markham Street, Little Rock AR (501) 371-4605 may have such relevant information. It is possible that Ms. Rowan's spouse (contact information unknown) may also have information. Medical care providers for the Plaintiff may have some information. Finally, persons identified in Plaintiff's Initial Disclosures and in Defendants' Initial Disclosure may also have information.

**INTERROGATORY NO. 2:** Has your driver, Bryson Juriel Bowers, had his driver's license subject to any arrests, tickets, offenses, violations, restrictions, suspensions, refusals to renew, cancellations, or revocations of any sort before the collision, which occurred on September 14, 2018 between the parties? If so, state the

2

name of the issuing state, the date of issuance, and the date and type of all arrests, tickets, offenses, violations, restrictions, suspensions, refusals to renew, cancellations, or revocations recorded on such license.

**RESPONSE:** Objection. This is temporally overbroad and seeks confidential information. Without waiving the objection, filing an entry of a suitable protective order, pertinent responsive information on Mr. Bowers that is in the control of New Bern will be made available.

**INTERROGATORY NO. 3:** State whether your driver, Bryson Juriel Bowers, had any physical or mental impairment within 5 years prior to the collision, which occurred on September 14, 2018, whether corrected or uncorrected, including vision, hearing, back, neck, legs, arms, hands, fingers, blackouts, epilepsy, seizure disorder, dizziness, or mental illness; and if so, describe each such impairment in detail, whether such impairment required medical treatment, and if so, provide the names and addresses of all physicians providing treatment along with the dates of treatment.

**RESPONSE:** Objection. This interrogatory seeks confidential and private health information. It is also temporally overbroad. Without waiving any objection, New Bern is unaware of Mr. Bowers having any type of impairment that would have negatively impacted his ability to operate a commercial motor vehicle as of September 14, 2018.

**INTERROGATORY NO. 4:** With reference to the trip your driver, Bryson Juriel Bowers, was taking at the time of the collision on September 14, 2018, state

where and when it started, the route that was planned to take, when and where all stops were that were made, what was done during the trip, where and when it was scheduled to end, the reason or reasons for the trip, the number of times Bowers traveled the roadway where the collision occurred before the date of the collision, and the name, address and telephone number for each passenger in the vehicle at the time of the collision, their relationship to you, and their purpose for being in the vehicle.

**RESPONSE:** The purpose of the trip was to service accounts regarding products delivered by New Bern. The trip started on Champs Blvd. in Maumelle, AR.  It is believed that at least one prior stop before the accident was at the Kroger store in Little Rock. New Bern is currently unaware of times prior to the date of the accident when Mr. Bowers had traveled the roadway where the accident took place. To the best of New Bern's knowledge, no occupant other than Mr. Bowers was in the New Bern vehicle at the time of the accident.

**INTERROGATORY NO. 5:** State specifically and in detail, in your words, how the collision on September 18, 2018 occurred, giving all events in detail in the order in which they occurred, including to a description of the weather conditions at the time of the collision, and what Bowers did, if anything, to avoid the collision. Please include a detailed description of all acts, activities, or movements made by the Plaintiff before, up to, and including the time of the collision, and following the collision until either Bowers or the Plaintiff left the scene of the collision.

**RESPONSE:**  Discovery is just commencing in this case so not all facts relating to the accident are currently known. Moreover, New Bern seeks to gain access to data from the vehicle that Ms. Rowan was driving when she struck the side of the trailer.  However, it is currently understood that the accident took place on a two-lane road, that the driver's side of the trailer for the truck that Mr. Bowers had been operating was struck by the front of the car that Ms. Rowan was driving after the trailer had entered the other lane.  Weather conditions did not appear to be contribute to the accident. Upon retrieval of data from the vehicle Ms. Rowan was driving, New Bern hopes to be able to supplement this response.

**INTERROGATORY NO. 6:**  State specifically and in detail how the Plaintiff and/or any third party may have caused, contributed to or been allegedly at fault in causing the collision described in Plaintiff's *Complaint*. If you answer this in the affirmative, then state the percentage of fault you believe should be assigned to the Plaintiff and each third party, and the basis for such contention, and state the name, address and telephone number for each such third party and the make, model, license plate number, and placards for the vehicle operated by such third party, if any.

**RESPONSE:**  Objection. This interrogatory is compound and also is premature insofar it seeks contentions before any substantive discovery has been completed. Objection is also made to stating "the percentage of fault," which is a matter for the jury to determine. Without waiving any objection, it is believed that Plaintiff bears a sizeable portion of the fault for the impact insofar as the car she

was driving failed to stop short of striking New Bern's trailer. Defendant seeks to discover data from the EDR in the vehicle Plaintiff was operating, which will provide information that will help identify Plaintiff's acts and omissions in the final seconds before her car struck the trailer.

**INTERROGATORY NO. 7:** State whether Bryson Juriel Bowers has been in any collision of any kind, motor vehicle or otherwise, before or after the collision described within the *Complaint*, and if so, state the date, place and type of collision, in addition to a description of how all claims, if any, arising therefrom were concluded. If Bowers was hurt in any such collision, then for each such collision state the nature of Bowers' injuries sustained, and the name and address for all physicians and hospitals providing treatment to Bowers.

**RESPONSE:** Objection. This is temporarily overbroad insofar as it seeks information on post-collision accidents.  It also seeks irrelevant and confidential health information about Mr. Bowers.  It also is ambiguous   Without waiving any objection, information on the existence of prior accidents, if any, will have to be supplemented.

**INTERROGATORY NO. 8:** State the names and addresses of persons retained or employed by you, your agents, and your liability insurance carrier <u>before</u> the filing of this lawsuit to investigate the facts surrounding the collision on September 14, 2018, and the Plaintiff's damages (hereinafter, "investigators"); the name, address and telephone number of any person contacted by your investigators;

6

the period during which the investigation was conducted; and whether your

investigators prepared written reports.

**RESPONSE:** Objection. This seeks work product, which is privileged.

**INTERROGATORY NO. 9:** Please state the name, address, telephone

number and professional credentials of any expert who you plan to call as a witness

at the trial, the subject matter on which you expect such expert(s) to testify, the

substance of the facts and opinions of such expert(s), and a summary of the grounds

for each opinion of such expert(s).

**RESPONSE:** At this point, no decision on any expert has been made.

**INTERROGATORY NO. 10:** Identify each person who has been consulted

in connection with, or who has provided information or assistance concerning the

response to any Interrogatory or Request for Production of Documents and provide

separately, by Interrogatory or Request for Production number, the position or job

title of such person, together with a description of the nature of the consultation,

the assistance or information provided, and by what authority such person has to

respond to this written discovery on your behalf.

**RESPONSE:** Objection to the form and scope of this interrogatory. To the

extent this interrogatory is fully understood, it appears to seek work product and

attorney client communications, which are privileged. Without waiving any

objection, Mr. John Stricklin of Sedgewick helped to collect or coordinate collection

of materials responsive to the discovery requests.

**INTERROGATORY NO. 11:** Before the collision described within Plaintiff's *Complaint* on September 14, 2018, did the vehicle Bryson Juriel Bowers was operating have any known defect, and if so, describe each defect and for each such defect state where the defect was located on the vehicle, whether the defect was present when the vehicle was received by you (and if not, from whom you acquired the vehicle), the date you first became aware of the defect, the nature and extent of any damages resulting from said defect, and whether it is your belief the defect contributed in any way to the collision and the reasons therefore.

**RESPONSE:** New Bern is unaware of any material defect existing in the vehicle at any pertinent time leading up to the point when Plaintiff's car struck New Bern's trailer.

**INTERROGATORY NO. 12:** Please state the names of any person with knowledge of the facts contained within Plaintiff's *Complaint*, and your *Answer*, including witnesses you have identified within these discovery responses, with adult relatives and in-laws living in the judicial district in which this lawsuit is pending.

**RESPONSE:** New Bern is not entirely certain what is meant by the final clause in this interrogatory, but the following persons are believed to have some knowledge of facts: Plaintiff Tiffany Rowan, Ms. Rowan's family members, Defendant Bryson Bowers, Officer Darrell Atkins, Jr. (Badge No. 38766), Little Rock Police Department, 700 West Markham, Little Rock, AR (501-371-4605). New Bern is currently unaware of relatives or in-laws of any of them living within the counties encompassing this division of the Eastern District of Arkansas, though it is

suspected that one or more relative of Ms. Rowan may live within the division.  In

addition to the foregoing, others listed in New Bern's Initial Disclosures and in

Plaintiff's Initial Disclosure may have knowledge of certain facts.

**INTERROGATORY NO. 13:**  Please state whether or not you have been

involved as either a plaintiff and/or defendant in litigation due to a motor vehicle

collision within the last ten (10) years. If so, please state the style of the litigation

(including date of filing, parties to the lawsuit, court where litigation was filed, and

docket number); the nature of and the results of the litigation; and whether you or

your agents offered any testimony, by way of deposition and/or trial, and if so, state

when and where testimony was offered.

**RESPONSE:**  Objection.  This is temporally and substantively overbroad

and not calculated to lead to the discovery of admissible evidence.  Without waiving

any objection, New Bern was a defendant party to a suit filed in 2014 in Dallas

County Circuit Court styled *Moss v. PepsiCo, Inc, et al.*  (No. CV 2014-36-6).  To the

best of New Bern's recollection, no New Bern agent offered testimony.  There was

another case, Southwestern Bell Telephone Company d/b/a AT& T Arkansas vs.

New Bern Transport Corporation, Jefferson County, AR. No. 35-CV-18-118, which

was filed February 5, 2018.  No New Bern agent offered testimony in that case.

Both cases were resolved without trial.

**INTERROGATORY NO. 14:**  State from Bryson Juriel Bowers'

observations, or your other representatives' observations (including your employees,

successors, representatives, assignees, insurance carrier's claims representatives

and underwriters, investigators, and agents), whether the Plaintiff appeared to have been physically injured, or mentally or emotionally disturbed as a result of the collision. If so, please describe Plaintiff's physical appearance, including whether there were any signs of bleeding, bruises, cuts or other physical injury; and whether the Plaintiff was crying, talking, complaining of pain, or otherwise appearing mentally disturbed.

**RESPONSE:** To the of New Bern's knowledge, Ms. Rowan did not appear to be physically injured.

**INTERROGATORY NO. 15:** With regard to Bryson Juriel Bowers' operation of the vehicle involved in the collision on September 18, 2018, please state from the date Bowers began employment with you until the collision occurred, Bowers' frequency of use of the vehicle; Bowers' frequency of use of any other vehicle owned by you; whether Bowers was accustomed to using any other vehicle owned by you other than the one involved in the collision, without obtaining specific approval or permission for each use; the average number of miles driven each month by Bowers in any vehicle owned or leased by you from the time of his employment with you until the time of the collision; whether you considered Bowers an independent contractor or an employee; whether you and Bowers had a lease purchase agreement for any vehicle he was authorized to drive on your behalf; and the bases of Bowers' compensation, including the type, amount, and rate of Bowers' pay, whether Bowers' rate of pay is by the hour or by the mile, whether Bowers is

10

responsible for fuel and maintenance costs of the vehicle(s) driven for you, and all fringe employment benefits.

**RESPONSE:** Mr. Bowers was an employee of New Bern starting in April of 2018. Mr. Bowers' compensation and fringe benefits are proprietary and confidential: consequently, objection is made. Mr. Bowers had no lease/purchase agreement with New Bern and he was not responsible for fuel or maintenance costs. Mr. Bowers regularly drove a truck for New Bern, but it would be virtually impossible at this point to determine the number of miles Mr. Bowers drove for the company on a monthly basis.

**INTERROGATORY NO. 16:** Have any of your drivers, including Bryson Juriel Bowers, committed any disqualifying commercial driving offenses in the state of Arkansas in the 8 years prior to the collision on September 14, 2018, including the following: driving a commercial motor vehicle while under the influence of alcohol where the blood alcohol concentration was 0.04 percent or more, or driving under the influence of alcohol as prescribed by state law; driving a commercial motor vehicle while under the influence of a controlled substance; refusing to undergo such alcohol or controlled substance testing after a collision, and/or a reasonable suspicion of using same, and/or as a follow-up test as is required by any state or federal jurisdiction; leaving the scene of a collision involving a commercial motor vehicle; or a felony involving the use of a commercial motor vehicle? If so, for each such offense, please identify the name of the driver, the date of the offense, the

11

county where the offense occurred, whether each such driver is still employed by you, and the judicial disposition of each such offense.

**RESPONSE:** Objection. To the extent that this interrogatory seeks information for drivers other than Mr. Bowers, it is substantively overbroad, not calculated to the lead to the discovery of admissible evidence, and not proportional to the needs of the case. It is also temporally overbroad. It also seeks confidential employment information. Without waiving any objection, any pertinent information regarding Mr. Bowers may not be provided until entry of a suitable protective order. Due to the passage of time associated with Plaintiff's delay in bringing this suit, New Bern will have to rely upon driver logs for ascertaining Mr. Bowers duty hours.

**INTERROGATORY NO. 17:** State the number of hours Bryson Juriel Bowers had been on duty when the collision on September 14, 2018, the number of hours Bowers had been on duty for each day for the seven days before the collision, and whether Bowers ever informed you or your dispatchers that he did not feel safe to drive at any time during his employment with you, and if so, the dates when he informed you or your dispatchers he did not feel safe to drive.

**RESPONSE:** To the best of New Bern's knowledge, it has no information indicating that Mr. Bowers did not feel safe driving at any time leading up to the time of the accident in question. Information on his hours on duty will have to be supplemented.

**INTERROGATORY NO. 18:** Please state the name, address and job title for all of your employees and/or agents who had any contact with you about the

collision on September 14, 2018, and if different on the day of the collision, the same

information for the current person, to include the following: the person who hired

Bryson Juriel Bowers; the person who provided training to Bowers; the person who

had safety and training oversight of Bowers; your Director of Safety; the person who

investigated the collision on September 14, 2018; members of Collision Review

Committee; your dispatchers for Bowers' trip on the collision date; the person

responsible for ensuring your compliance with DOT hours of service regulation; the

supervisor for Bowers and your dispatchers communicating with Bowers on the day

of the collision; the medical review officer; the head of dispatch; the chief of

operations; the head of maintenance for the vehicle operated by Bowers; and the

person responsible for maintaining records for each of the previously described

persons.

**RESPONSE:**  Objection to the vague and overbroad nature of this

interrogatory, particularly insofar as no well-founded allegation exists as to any

improper maintenance on the New Bern vehicle, much less any connection between

the condition of the truck and the cause of the accident. In addition, please see

response to Request for Production No. 32, which is incorporated herein.  Also

Without waiving the objection, Mr. Bowers was trained as a driver before he started

driving for New Bern.  Additional training of Mr. Bowers was provided by various

people including Mr. Jesse Dorsey, Mr. Garrett Blue, and Mr. Paul Dolan.  Merritt

Rausch and Ellen Cupit were medical examiners.

2529968-v1

**REQUEST FOR PRODUCTION NO. 1:**  Please produce for inspection and copying all unredacted insurance declarations sheets, insurance agreements and policies under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment which may be rendered in this action, or to indemnify or reimburse for payments made to satisfy any such judgment, including but not limited to any kind of liability insurance policy covering you, Bryson Juriel Bowers, or any vehicle (including the trailer) for the collision on September 14, 2018, any excess or umbrella type of liability insurance coverage, medical payments benefits, any and all self-insurance and re-insurance plan documents, and documents showing the amount of deductible or retention by each insured under every applicable policy of insurance.

**RESPONSE:**  Objection. The amount of premiums paid for any listing of assets in connection with insurance documentation are not properly discoverable; consequently, any insurance information provided must be appropriately redacted. Without waiving the objection, please see insurance information supplied with Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 2:**  Please produce for inspection and copying all exhibits you will or may offer into evidence at the trial or any hearing hereof, along with any documents you may be refer to during cross-examination, and all demonstrative evidence, visual aides, maps, diagrams, test results, experiments, charts, models, graphs, or summaries you may be shown to the jury, regardless of whether same may be introduced into evidence.

14

**RESPONSE:**  Objection. This is not only premature, but also would invade the attorney-client privilege insofar as the request seeks documents "you may be referred to" (sic). Without waiving any objection, no decision has been made as to such exhibits.  However, please see documents referred to in Defendants' Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 3:**  Please produce for inspection and copying all unredacted orally recorded or written statements made by the Plaintiff at any time, made by Bryson Juriel Bowers, his supervisor, and Bowers' dispatchers, between Bowers and your dispatchers, or other Defendants over whom you have control <u>before</u> the filing of this lawsuit in reference to the collision on September 14, 2018, and made by any other witness or persons having knowledge of the collision or Plaintiff's damages arising from such collision.

**RESPONSE:**  Objection. Other than any statement of Plaintiff, the request seeks materials that, if they exist, would constitute New Bern's work production. Without waiving the objection, aside from the police report (which presumably plaintiff already has) Defendant New Bern currently has no orally recorded or written statements of Plaintiff as New Bern understands the term.

**REQUEST FOR PRODUCTION NO. 4:**  Please produce for inspection and copying an unredacted copy of any and all repair bills, damage estimates, appraisals, and related documents concerning the damages to any and all vehicles involved in the collision on September 14, 2018, including your own and Plaintiff's vehicle.

2529968-v1

**RESPONSE:**  Objection to the vagueness of the term "related documents (and potentially privilege status of such documents). Without waiving the objection, to the extent repair bills and repair estimates exists, copies will be produced.

**REQUEST FOR PRODUCTION NO. 5:**  Please produce for inspection and copying all unredacted photographs and video of the area of the collision scene, the persons involved in the collision, and the vehicles involved in the collision on September 14, 2018.

**RESPONSE:**  Objection to the extent that this seeks work-product or otherwise privileged materials. Without waiving the objection, any photo or video of the vehicle or scene that New Bern plans to use at trial will be produced once a decision on such use has been made.

**REQUEST FOR PRODUCTION NO. 6:**  Please produce for inspection and copying an unredacted copy of all investigative reports, photos, or videotape made of the Plaintiff made at any time.

**RESPONSE:**  Objection. This seeks work product and/or attorney client communications. To the extent any video of the Plaintiff is made, it will be produced only after her deposition has been completed.

**REQUEST FOR PRODUCTION NO. 7:**  Please produce for inspection and copying an unredacted copy of all employment records, business records, tax returns, workers compensation records, Social Security records, Veteran's records, unemployment compensation records, medical records, medical information,

2529968-v1

educational records, vocational records, or other documents concerning the Plaintiff

you or your attorney obtained from any source other than from Plaintiff's counsel.

**RESPONSE:** Objection. This seeks Defendant's work product information

and the Plaintiff has the equal or better ability to procure same at her own expense.

Without waiving the objection, Defendant will follow the requirements of the

Court's Scheduling Order with respect to production of exhibits.

**REQUEST FOR PRODUCTION NO. 8:**  Please produce for inspection and

copying a complete and unredacted copy of the insurance investigation files

prepared by your insurance carrier <u>before</u> litigation counsel was retained, which

should include photographs, statements, diagrams, adjustor reports, claim

evaluations, investigative reports, and other documents.

By " other documents," this request means all manner of written,

typewritten, printed or recorded material whatsoever, including any graphic,

mechanical or oral records or recordings of any kind, correspondence, letters,

telegrams, memoranda, records of meetings or conferences, contracts, agreements,

reports, checks, statements, receipts, returns, summaries, tickets, drafts, inter- and

intra-office communications, offers, notations of conversations, records of telephone

calls or meetings, printed matter; and computer print-outs, teletypes, facsimiles,

invoices, pictures, blueprints, schematics, tape recordings, digital recordings,

transcriptions of records, video recordings, logbooks, business records and all drafts,

alterations, modifications, changes and amendments of any of the foregoing; any

and all data contained on any computer system that may be printed or copied to

DVD or CD-ROM to respond hereto, including but not limited to email messages, case management data, claim valuation information, and other information maintained electronically; of which you have knowledge or which are now or were formerly in your actual or constructive possession, custody, or control.

**RESPONSE:** To the extent any such information exists, it was produced in anticipation of litigation. Consequently, it is barred from discovery by the work product doctrine.

**REQUEST FOR PRODUCTION NO. 9:** Please produce for inspection and copying a complete and unredacted copy of your office and cellular telephone bills, mobile radio bill, pager bill, or other wireless device bill for September 14, 2018, showing all communications initiated or received by Bryson Juriel Bowers.

**RESPONSE:** To the best of New Bern's current knowledge, it has no such bills.

**REQUEST FOR PRODUCTION NO. 10:** Please produce for inspection and copying a copy of the front and back side of each driver's license Bryson Juriel Bowers has had from the date he began employment with you until the collision occurred on September 14, 2018.

**RESPONSE:** These will be produced.

**REQUEST FOR PRODUCTION NO. 11:** Please produce for inspection and copying all documents reflecting the disposition issued by any court, licensing agency, or law enforcement agency reflecting all arrests, tickets, offenses, violations, restrictions, suspensions, refusals to renew, cancellations, or revocations recorded

2529968-v1

on each driver's license Bryson Juriel Bowers had, if any, from the date Bowers began employment with you until the collision occurred on September 14, 2018.

**RESPONSE:** To the extent New Bern has any such documents, they would be part of confidential employment records, which can not be produced absent of entry of appropriate protective order.

**REQUEST FOR PRODUCTION NO. 12:** Please produce for inspection and copying the results of all alcohol and drug tests that were administered to Bryson Juriel Bowers following this collision on September 14, 2018.

**RESPONSE:** To the extent any such test results exists, they constitute confidential employment and health records and, in accordance with 49 CFR § 382.405 cannot be produced absent an entry of an appropriate protective order.

**REQUEST FOR PRODUCTION NO. 13:** Please produce for inspection and copying a complete and unredacted copy of any receipt, sales ticket, cash register receipt, credit card receipt, and any other document related to Bryson Juriel Bowers' purchase or consumption of alcohol or drugs, prescription or otherwise, if any, within 24 hours preceding the collision on September 14, 2018.

**RESPONSE:** New Bern has no such document.

**REQUEST FOR PRODUCTION NO. 14:** Please produce for inspection and copying a complete and unredacted copy of any written form of caution, reprimand, suspension, termination, or other disciplinary actions by you related to any of Bryson Juriel Bowers' employment positions with you with respect to the

2529968-v1

method or manner in which motor vehicles were driven from the date Bowers began employment with you until the collision occurred on September 14, 2018.

**RESPONSE:** Objection. To the extent that any such documents exists, it would constitute a confidential personnel record that cannot be produced absent of an appropriate protective order.

**REQUEST FOR PRODUCTION NO. 15:** For each expert retained or specially employed by you to provide expert testimony in this matter, or one of your employees or agents whose duties involve regularly giving expert testimony, please produce the following:

    A. The written report required by Fed. R. Civ. P. 26(a)(2)(B);

    B. A complete statement of all opinions the witness will express and the basis and reasons for them;

    C. The facts or data considered by the witness in forming his or her statements or opinions;

    D. Any exhibits that will be used to summarize or support his or her statements or opinions;

    E. The witness's qualifications, including a list of all publications authored in the previous 10 years, including a current copy of the individual's curriculum vitae;

    F. A list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    G. A statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE:** Objection. To the extent this seeks information on consulting experts. Without waiving any objection, no decision has been made on expert witnesses and, consequently, the information sought is premature. Such

20

2529968-v1

information on experts will be produced in accordance with the Court's Scheduling Order.

**REQUEST FOR PRODUCTION NO. 16:**  Please produce for inspection and copying the complete file of any testifying expert in this case, including any and all work papers, notes, correspondence, email messages, computer files, photographs, videotape, and all other documents in the file of any expert witness who is expected to testify, or in the file of any expert witness who has written a report which is or may be relied upon in whole or in part by a testifying expert in this case.

**RESPONSE:**  Objection. This request apparently seeks data beyond that provided for under Rule 26. Without waiving the objection, no decision on experts has been made.  Please see response to Request No. 15, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 17:**  Please produce for inspection and copying all documents or tangible things prepared by any expert whom you expect to call as a witness, including the expert's reports, factual observations, opinions, conclusions, email messages, computer files, photographs, field notes, calculations, models and exhibits.

**RESPONSE:**  No decision has been made at this time as to any testifying expert. Please see response to Request Nos. 15 and 16, which are incorporated herein.

21

**REQUEST FOR PRODUCTION NO. 18:**  Please produce for inspection and copying any learned treatises or authoritative scientific or medical literature upon which any expert intends to rely in giving any expert testimony in this case.

**RESPONSE:**  No decision has been made at this time as to any testifying expert.

**REQUEST FOR PRODUCTION NO. 19:**  Please produce for inspection and copying an unredacted copy of all data retrieved in electronic format, as well as printed from your truck's Electronic Control Module (ECM), Eaton Vorad collision warning or vehicle management system, your truck's computerized governor, and all other on-board recording devices and "black boxes" to include maximum speed, braking, and all other available data in existence prior to the collision on September 14, 2018 while Bryson Juriel Bowers was driving your truck.

**RESPONSE:**  If any such data was downloaded from the truck, it will be provided. However, at this point it is not believed any such data is available.

**REQUEST FOR PRODUCTION NO. 20:**  Please produce for inspection and copying an unredacted copy of all QualComm or other Global Positioning System (GPS) data, or satellite tracking data, available for the collision on September 14, 2018.

**RESPONSE:**  To the extent such data exists, it will be produced.

**REQUEST FOR PRODUCTION NO. 21:**  Please produce for inspection and copying a complete and unredacted copy of all educational, training, or regulatory materials provided or shown to Bryson Juriel Bowers from the date

2529968-v1

Bowers began employment with you until the collision occurred on September 14, 2018, including Federal Motor Carrier Safety Regulations.

**RESPONSE:** Objection. This is overbroad and seeks confidential and proprietary materials. In addition, the term "regulatory materials" is vague.

**REQUEST FOR PRODUCTION NO. 22:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of all trip and/or operational documents pertaining to the movement of your vehicle, Bryson Juriel Bowers, or any Co-Driver(s), or driver trainers on the day of the collision on September 14, 2018, as well as for one month before the collision, and one month after the collision.

The term "trip" in this request means the transportation and/or movement of one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to final destination(s) and includes the travel "empty or unloaded" from that destination point to the next point or location of loading, end of trip, or new trip origin.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

The term "operational documents" in this request includes the following applicable to the records generated for **each** "trip" made by you during the time period requested:

A.    Complete and clearly readable copies of e-mail communications, trip reports, trip envelopes, daily loads delivered or picked up or any otherwise described work reports, work schedule reports, fuel purchased reports, or any reports made by any of the Defendants, inclusive of daily, weekly, or monthly cargo transported, time and/or distance traveled reports or work records, excluding only those documents known as "driver's daily logs" or driver's record of duty status.

B.    Complete and clearly readable copies of receipts for any trip expenses or purchases made by Bowers or Co-Driver during a trip regardless of type of purchase, such as fuel, weighing of vehicle, food, lodging, equipment maintenance, repair or equipment cleaning, special or oversize permits, bridge and/or toll road, loading or unloading cost, or other receipts regardless of the type of object or services purchased.

C.    Complete and clearly readable copies of cargo pickup or delivery orders prepared by any of the Defendants, transportation brokers, involved shippers or receivers, motor carriers, operations/dispatch personnel, drivers, or other persons or organizations relative to the cargo transported and operations of your vehicle.

D.    Complete and clearly readable copies of any and all written requests, letters, instructions, Hazardous Materials Shipping Papers, or orders for transportation of cargo prepared by any Defendant, transportation brokers, involved shippers or receivers, motor carriers, operations/dispatch or sales personnel, drivers, or other persons or organizations relative to the operations of your vehicle.

E.    Complete, unredacted, and clearly readable copies of all bills of lading and/or manifest prepared or issued by any shipper, broker, transporting motor carriers personnel, receivers of cargo, or any of the Defendants. This specifically includes readable and complete copies of bills of lading, manifest, or other documents regardless of form or description, that show signed receipts for cargo delivered along with any other type of document that may show dates and times of cargo pickup or delivery relative to the operations of your vehicle.

F.    Complete, unredacted and clearly readable copies of all equipment or cargo loading and unloading or detention of

equipment records along with any other documents showing cargo pickup and delivery dates, and times or delays and/or detention of equipment relative to operations of your vehicle.

G.   Complete, unredacted, and clearly readable copies of all cargo transported freight bills, Pro's or otherwise described similar documents inclusive of all signed or unsigned cargo pickup and delivery copies that indicate pick up or delivery of cargo by Bowers or a Co-Driver.

H.   Complete, unredacted, and clearly readable copies of all written instructions, orders, advice, or other documents given to you in reference to cargo transported, routes to travel, locations to purchase fuel, cargo pickup, and delivery times issued by you or any Defendant, shippers, receivers, or any other persons or organizations.

I.   Complete, unredacted, and clearly readable copies of dispatch and/or operational records indicating assignment of equipment and drivers to specific cargo pickup, transportation and delivery, dates and times of pickup and delivery, movement of cargo, shippers and receivers of cargo, and any other related operational records or documents, regardless of form. This specifically includes all dispatch and operational type computer generated documents and materials indicating the operations or movements of your vehicle, or Bowers' activities.

J.   Complete, unredacted, and clearly readable copies of any call-in records, or otherwise described written records indicating any communications between Bowers, Co-Driver(s), and you.

K.   Complete, unredacted, and clearly readable copies of all accounting records, merchandise purchased, cargo transportation billings, or invoices and subsequent payments or otherwise described records indicating billings for transportation of cargo or payment for services performed for you by Bowers and Co-Drivers.

L.   Complete, unredacted, and clearly readable copies of all initial or rough trip check-in or financial settlement sheets along with all final trip accounting documents, and computer generated documents or printouts showing expenses and payment(s) for service(s) or salary to Bowers in reference to a trip or trips. This specifically includes any summary type documents showing all

25

payments made to Bowers and Co-Driver(s) regardless of the purpose of payment or period of time payment was made for.

M. Complete, unredacted, and clearly readable copies of any and all motor carrier or trip fuel mileage and purchase reports or records created by Bowers. This specifically includes all documents and computer generated documents, regardless of form or subject, received from any source such as the organization known as "COMCHECK," or "EFS" generated for or by you or other Defendants showing date, time, and location of fuel or other purchases by Bowers or Co-Drivers while on the trips requested herein.

N. Complete, unredacted, and clearly readable copies of all checks or otherwise described negotiable instruments issued to Bowers or Co-Driver(s) given in payment as trip advances, loans, or for any other purpose inclusive of checks issued for employee payroll, and/or for owner/operator or trip lessor service in the possession of any of the Defendants. Specifically copies of both the front and back of each check and/or COMCHECK issued to your Driver or Co-Driver(s) is requested.

O. Complete, unredacted, and clearly readable copies of any and all state special fuel or oversized permits and any related documents or requests issued to or by any state agency to transport cargo over their territories regardless of the form of the permit. The receipt acknowledging payment for the permit(s) issued by any governmental agency is specifically requested that relate to the movement of Bowers and/or Co-Driver(s).

P. Complete, unredacted, and clearly readable copies of any and all trip leases or trip lease contracts involving Bowers or Co-Drivers along with all related documentation issued to or created or received by any of the Defendants. Specifically, this includes any trip leases negotiated between any of the Defendants and/or any other motor carrier or their drivers inclusive of all related documentation thereto. Basically, "related documentation" consist of any documents created or generated in reference to the trip lease(s) and in addition, driver's daily logs or record of duty status, driver's daily condition reports, motor carrier certification of driver's qualification, and includes other documents that relate to the billing and payment for such movement of freight, along with all other types of documentation regardless of form or

26

description, relative to each occurrence involving the service and activities of Bowers or Co-Driver(s).

Q.  Complete, unredacted, and clearly readable copies of all weigh station records and all scale receipts during the time period requested.

R.  Complete and clearly readable copies of any and all other operational documents, as well as all other notes, diaries, notebooks, computer files, etc. created or received by any of the Defendants, or any other persons or organizations, regardless of form or description and not defined herein, in the possession of you or any of the Defendants, and relative to the operations, activities, movements and trip accomplished by Bowers or Co-Driver(s) during the time period requested.

You are requested to follow closely and to group and identify all documents produced by each trip occurring during the requested time periods.

**RESPONSE:**  Objection to the vagueness of the term "and/or operational documents", to the compound nature of this request,  to the request for information on "driver trainers", and to the extent that this seeks confidential records including financial records.  Moreover, it appears that no effort was made to narrow the scope of this form request to the issues germane in the case at bar.  Please note that Mr. Bowers was not working as an over-the-road driver for New Bern, nor was he an owner-operator.

**REQUEST FOR PRODUCTION NO. 23:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of the "Driver Qualification File" maintained by you and/or any of the Defendants over whom you have control, on Bowers and any Co-Driver, along with any other documents contained therein, in their precise state of existence on and after the date of the

collision on September 14, 2018, including documents added after the collision, to the present date, as maintained by you or any other Defendant over whom you have control.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

The term "Driver's Qualification File" as used in this request means those records specifically required by Federal Motor Carrier Safety Regulations (specifically 49 C.F.R. §§ 383 and 391), to be created and maintained by or on any driver who performs services or work for or on behalf of you or any of the Defendants. A basic description and definition of the documents requested in the Driver's Qualification File is provided below:

A.   Any pre-employment questionnaires or other documents secured prior to employment.

B.   Any and all completed applications for employment secured both before and/or after the actual date of contract or employment.

C.   All medical examinations, drug tests, and certification of medical examinations inclusive of expired and non-expired documents.

D.   All annual violation statements, which should include one for each twelve months of contract or employment with you in this case.

E.   All actual driver's motor carrier road tests that were administered.

F.   All actual driver's motor carrier written tests that were administered.

G.     All road and written test certificates issued by you or any other motor carrier or organization to Bowers regardless of the date issued or the originator of such certificates.

H.     All past employment inquiries sent to or secured from former employers along with all responses received from former employers inclusive of all U.S. mail, personal contacts, telephone inquiries, fax transmittals, email messages, and results directed to or received by you from past employers.

I.     All inquiries to and answers received from any organization in reference to Bowers' license record of traffic violations and collisions directed to and/or received by any of the Defendants, or other organizations on behalf of any Defendant, from state or federal governmental agencies relative to Bowers.

J.     Copies of the front and back of all road or written test cards, medical cards, motor carrier certification of driver qualification cards, other driver qualification cards, and any other motor carrier transportation related cards regardless of card issuance date or origin. This specifically includes cards, as previously described herein, issued by you and all other motor carriers to Bowers or Co-Drivers.

K.     All annual reviews, file reviews, file summaries, and related documents found in Bowers' Qualification File.

L.     All documents relative to any drug and alcohol testing, or lack thereof.

M.     Any and all other contents of the driver qualification file, regardless of subject, form, purpose, originator, receiver, title or description.

**RESPONSE:** This request seeks confidential personnel records; consequently, objection is made. Without waiving any objection, pertinent portions of Mr. Bowers' driver qualification file will be made available file an entry of an appropriate protective order.

2529968-v1

**REQUEST FOR PRODUCTION NO. 24:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of Bryson Juriel Bowers' "Driver Personnel File" and/or any otherwise titled files in reference to Bowers' services, from initial contract or employment with you to the present date, including the application for employment, driver qualification information, driver job reviews, cautions, reprimands, suspensions, terminations, or other disciplinary action, or awards provided by you.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

The term "Driver's Personnel File," as used in this request means any and all files, records, communications, or documents created by you, or any other person or organization containing documents directed to, received from, or about Bowers or a Co-Driver. A basic description and definition of the documents requested in the "Driver's Personnel File" is provided below:

A.   Applications, contracts, agreements, payroll or money advanced records, attendance records, computer generated documents, and any other document regardless of subject, description, or form relative to hiring and discipline of drivers.

B.   Hiring, suspension, termination, warning notices, complaints, letters, memorandums, and any other disciplinary documents.

C.   Prior industrial, vehicular, cargo, hazardous materials, health or collision reports, or other types of injury, sickness, collisions, or loss reports or records inclusive of cargo shortage or damage

2529968-v1

reports, along with all related documents to each such sickness, incident, or collision.

D.   Federal Office of Motor Carrier Safety Field Operations or other law enforcement agencies, terminal audits or roadside equipment and/or driver inspection reports, traffic citations or traffic warnings, inclusive of any of your file reviews, or the file reviews of other trucking companies Bowers may have been working for as an independent contractor within your possession, or summaries of violations of company, state, or federal laws, rules, or regulations.

E.   Any and all other documents found in such a file, regardless of description, title, form, origin, or subject, maintained by you or other Defendants but within your possession in reference to Bowers, excluding only those documents required by 49 C.F.R. § 391, Driver Qualifications, which was provided in Request No. 23.

**RESPONSE:** This request seeks confidential personnel records; consequently, objection is made. Without waiving any objection, pertinent portions of Mr. Bowers' driver personnel records will be made available following entry of an appropriate protective order.

**REQUEST FOR PRODUCTION NO. 25:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of records pertaining to Bryson Juriel Bowers' DOT physical from the date Bowers began employment with you until the collision occurred on September 14, 2018.

**RESPONSE:** This seeks confidential health records that cannot be produced absent entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 26:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of your hiring and background check policies, as well as all documents relating to the hiring and

31

termination of Bryson Juriel Bowers, including limitations on who you will or will not accept for employment, Bowers' motor vehicle record, Bowers' collision history, Bowers' history of drug or alcohol usage, Bowers' prior and subsequent driving experience when you hired him, and your evaluation of Bowers' attitude and fitness.

**RESPONSE:** New Bern's hiring and background policies are considered proprietary. To the extent that this multi-faceted request seeks personnel and health records on Mr. Bowers, those too are confidential.  To the extent any such records are germane, they cannot be produced absent an entry of a suitable protective order.

**REQUEST FOR PRODUCTION NO. 27:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of any terminal audits, road equipment and/or driver compliance inspections, or warnings and traffic citations issued in reference to Bryson Juriel Bowers or Co-Drivers, or Bowers' trainers, by any city, county, state or federal agency or law enforcement official in the possession of you or any of the Defendants over whom you have control, regardless of the date of origin. This request specifically includes any documents issued by any governmental agencies or officials in reference to violations of any State Motor Carrier Safety Regulations, or Federal Motor Carrier Safety Regulations, or Hazardous Materials Regulations that may have been issued.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or

operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

"State Motor Carrier Safety Regulations" in this request means Arkansas Motor Carrier Safety Regulations as adopted by the Arkansas Department of Transportation, Motor Vehicle Division, under their Rule No. R-17-4-435 and titled, "Rules and Regulations for the Enforcement of Motor Carrier Safety Provisions and the Transportation of Hazardous Materials" in effect on the date of the collision, September 14, 2018.

"Federal Motor Carrier Safety Regulations" in this request means the regulations codified at 49 C.F.R. §§ 380-397 in effect on the day of the collision, September 14, 2018.

"Hazardous Materials Regulations" in this request means regulations codified at 49 C.F.R. §§ 397.1-397.103 in effect on the day of the collision, September 14, 2018.

**RESPONSE:** Objection to the extent that this request seeks information on "Bowers' trainers". In addition, this request is overbroad and, to some extent vague (particularly insofar as it seeks "any documents issued by any governmental agencies or officials in reference to violations of any State Motor Carrier Safety Regulations or Federal Motor Carrier Safety Regulations, or Hazardous Materials Regulations."

**REQUEST FOR PRODUCTION NO. 28:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of all collision files

33

and records, objects, photographs, drawings, reports, statements or otherwise

described documents in your possession, or in any of the Defendants possession over

which you may have control, in reference to the collision on September 14, 2018,

"excluding only" those written documents or materials and objects that can be

clearly identified as the work product of the attorney for any Defendant.

The term "collision files and records" in this request is intended to have broad

reference to all forms of recorded information, including writings and recordings as

defined in Fed. R. Civ. P. 1001, and includes written or recorded statements,

reports, memorandums, correspondence, maps, diagrams, pictures, blueprints,

plats, and other related objects and documents inclusive of any documents, letters

to or from or records and reports required by or from you or any of the Defendants,

or by other organizations, state governmental agencies, or the Federal Department

of Transportation, Office of Motor Carrier Safety.

**RESPONSE:**  Objection, to the extent that any such documentation exists, it

would have been produced in anticipation of litigation and is therefore privileged.

Without waiving any objection, photos of the vehicles will be produced.

**REQUEST FOR PRODUCTION NO. 29:**  Please produce for inspection

and copying complete, unredacted, and clearly readable copies of all collision files

and records in reference to the collision on September 14, 2018 in your possession,

or in the possession of any of the Defendants over which you have control,

maintained or generated in accordance Federal Motor Carrier Safety Regulations.

This includes any reports, correspondence or any otherwise described documents

sent to or received from the Federal Office of Motor Carrier Safety Field Operations, reports made to other persons or organizations and any report made by Bryson Juriel Bowers, a Co-Driver or driver trainers, in reference to this collision. This request also specifically includes any and all otherwise described documents relative to this collision found in the file required to be maintained by you in accordance with the collision reporting and recording pursuant to Federal Motor Carrier Safety Regulations.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

The term "collision files and records" in this request is intended to have broad reference to all forms of recorded information, including writings and recordings as defined in Fed. R. Civ. P. 1001, and includes written or recorded statements, reports, memorandums, correspondence, maps, diagrams, pictures, blueprints, plats, and other related objects and documents inclusive of any documents, letters to or from or records and reports required by or from you or any of the Defendants, or by other organizations, state governmental agencies, or the Federal Department of Transportation, Office of Motor Carrier Safety.

"Federal Motor Carrier Safety Regulations" in this request means the regulations codified at 49 C.F.R. §§ 380-397 in effect on the day of the collision, September 14, 2018.

2529968-v1

**RESPONSE:** Objection, this request is vague and compound. To the extent that it is understood and any such documentation exists, it would have been produced in anticipation of litigation and is therefore privileged.

**REQUEST FOR PRODUCTION NO. 30:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of any and all other collision records or incident records maintained by you, or maintained by any of the Defendants over which you have control, in reference to any other vehicular collision, for 5 years prior to the collision in question, where your Driver, Co-Driver(s), or your driver trainer, was the driver of a vehicle involved.

The term "collision files and records" in this request is intended to have broad reference to all forms of recorded information, including writings and recordings as defined in Fed. R. Civ. P. 1001, and includes written or recorded statements, reports, memorandums, correspondence, maps, diagrams, pictures, blueprints, plats, and other related objects and documents inclusive of any documents, letters to or from or records and reports required by or from you or any of the Defendants, or by other organizations, state governmental agencies, or the Federal Department of Transportation, Office of Motor Carrier Safety.

The term "Driver" in this request means Bryson Juriel Bowers, and any person employed by, or contracted for or with you, including persons known as Co-Drivers, driver trainer, independent contractors, owner operators or trip lessors, and includes persons furnished to you or other Defendants over which you have

36

control, as drivers by any other person or organization who perform driving services on their behalf.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

**RESPONSE:** Objection. This request is both substantively and temporally overbroad. In fact, it is so overbroad as to conceivably extend to attorney client communications relating to other accidents that have nothing to do with the accident in question. To the extent that it seeks information on other drivers, it is not calculated to lead to the discovery of admissible evidence. Please also see response to Request No. 29, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 31:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of all hours of service records of Bryson Juriel Bowers and Co-Drivers present on the day of the collision, September 14, 2018, including their record of duty status, their daily logs and 70/60-hour summaries created by Bowers or the Co-Driver, from the date they began their employment with you through the date of the collision, in accordance with 49 C.F.R. § 395 in your possession, or in the possession over any of the Defendants over which you have control.

The term "hours of service records" in this request means any and all documents created in reference to 49 C.F.R. § 395, including, Bowers' record of duty

status or daily drivers' logs, time worked cards or other time worked records or

summaries, your administrative log audits and/or 70/60-hour log audits along with

any records or reports of violations, or any otherwise described documents advising

any of Bowers' or a Co-Driver's hours of service violations. This specifically includes

all advice, reprimands or warnings sent to Bowers or any of your Co-Driver(s) for

violations of 49 C.F.R. § 395, "Hours of Service of Drivers" regulations by or on

behalf of you or other parties over which you have control.

      The term "Co-Driver" in this request means any person(s) driving or riding

with Bowers from time to time in over the road motor carrier equipment, owned or

operated by you, and from time to time working for or with Bowers in the capacity

of a Co-Driver and/or driver trainer.

      **RESPONSE:**  Objection. This request is substantively and temporally

overbroad. It also apparently extends to materials that – if they existed – would

constitute confidential personnel records.  To the extent that it is construed to apply

to any trainer or other driver for New Bern, it is intrusive and seeks private

information and is not calculated to lead to the discovery of admissible evidence.

      **REQUEST FOR PRODUCTION NO. 32:**  Please produce for inspection

and copying complete, unredacted, and clearly readable copies of all maintenance

files and records maintained by you, or any of the Defendants over which you have

control, from one year before up to and including the collision on September 14,

2018, in accordance with 49 C.F.R. § 396 on the Tractor and the Trailer involved in

the collision, inclusive of any inspection, repair or maintenance done to the Tractor

and Trailer. This request includes all driver daily vehicle condition reports submitted by any and all driver(s) of the said Tractor and Trailer, from six months before the collision through the date of the collision in the possession of you, or any of the Defendants over which you have control. This specifically includes all the drivers daily vehicle condition reports, maintenance files and records maintained by any other person(s) or organization(s) that Bryson Juriel Bowers or you may have borrowed, rented or leased the Tractor from, or who performed maintenance services on behalf of, or for you or Bowers.

The term "maintenance files and records" in this request means those documents required to be created and/or maintained by you or other parties in accordance with 49 C.F.R. § 396, "Inspection, Repair and Maintenance." This includes the "Tractor" and "Trailer" daily condition reports prepared by your Driver and other drivers of same, all inspections, repairs, list of add-ons and/or take offs of equipment parts and accessories, accounting records, bills, or notes of repairs or maintenance by your Driver, Trucking Company, or other agencies or organizations, inclusive of any summary or computer generated type record of systematic lubrication, inspection and maintenance records and documents in the possession of your Driver or Trucking Company or other parties. Please be reminded that the "Tractor" and "Trailer" is defined above to be the units involved in the "collision" in this case. This definition specifically includes any and all driver daily condition reports created by any driver, and maintenance files and records maintained by and

in the possession of any other person or organization performing maintenance services for or on behalf of your Driver or Trucking Company.

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** To the best of New Bern's knowledge there is no factually-based assertion that maintenance for or condition of the tractor trailer had any role in the accident underlying this case; nor does there seem to be a viable allegation in the pleadings as to any such issue.  As a result, any such request it neither germane nor proportional to the needs of this case.   Accordingly, objection is made. However, if you will please identify any such basis, then New Bern will consider the request and, if appropriate, provide suitable maintenance records.

**REQUEST FOR PRODUCTION NO. 33:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of the titles of both the Tractor and Trailer involved in the collision on September 14, 2018 in their precise state of existence on the date of the collision.

The term "Tractor" in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

40

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:**  New Bern will attempt to locate and produce appropriate title information.

**REQUEST FOR PRODUCTION NO. 34:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of any and all created "vehicular movement recording documents or records," such as any Tractor trip computer generated documents, tachograph charts, computer generated trip printouts or any other documents generated by whatever means, in reference to the physical movement of the Tractor and/or Trailer involved in the collision, from one month before collision to the date of the collision on September 14, 2018. This request specifically excludes dispatch records, driver's daily logs or records of duty status as covered by other requests for production herein.

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:**  It is uncertain what responsive documents may exist at this time.  To the extent that records of the subject vehicle's movements on the date of the accident are available, they will be produced. Beyond that, the records are not germane to any issue in this case and are therefore objectionable.

**REQUEST FOR PRODUCTION NO. 35:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of any and all agreements, contracts, leases, or written arrangements in effect when the collision occurred on September 14, 2018 between Bryson Juriel Bowers and you, including any contracts to perform transportation services on your behalf. This specifically includes any owner/operator, sale or leasing of truck(s), tractor(s) and/or trailer(s) documents, or lease purchase agreement(s) between Bowers and you, or other persons in reference to the equipment operated by or services performed by Bowers.

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:**  To the best that New Bern understands this request, not applicable.

**REQUEST FOR PRODUCTION NO. 36:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of any contracts, purchases, loans, leases, maintenance, rental or payment contracts or agreements, involving the Tractor and/or Trailer in effect when the collision occurred on September 14, 2018.

2529968-v1

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** Please see response to Request No. 32, which is incorporated herein. Please also note that Mr. Bowers was not an over-the-road driver, independent contractor or otherwise leasing or purchasing the vehicle.

**REQUEST FOR PRODUCTION NO. 37:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of your systematic inspection, repair and maintenance, equipment program, or maintenance files and records required by 49 C.F.R. § 396, inclusive of one blank copy each of all forms and documents utilized in accomplishing compliance with 49 C.F.R. § 396. This specifically includes any documents or records on systematic inspection, repair or maintenance of equipment created and in effect on the date the collision occurred by any other organization you or Bowers may have rented, leased or contracted with in reference to the Tractor and/or Trailer. The purpose of this request is for the Plaintiff to acquire a basic understanding of your systematic vehicular maintenance system.

The term "maintenance files and records" in this request means those documents required to be created and/or maintained by you or other parties in accordance with 49 C.F.R. § 396, "Inspection, Repair and Maintenance." This

includes the "Tractor" and "Trailer" daily condition reports prepared by your Driver and other drivers of same, all inspections, repairs, list of add-ons and/or take offs of equipment parts and accessories, accounting records, bills, or notes of repairs or maintenance by your Driver, Trucking Company, or other agencies or organizations, inclusive of any summary or computer generated type record of systematic lubrication, inspection and maintenance records and documents in the possession of your Driver or Trucking Company or other parties. Please be reminded that the "Tractor" and "Trailer" is defined above to be the units involved in the "collision" in this case. This definition specifically includes any and all driver daily condition reports created by any driver, and maintenance files and records maintained by and in the possession of any other person or organization performing maintenance services for or on behalf of your Driver or Trucking Company.

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** Please see response to Request No. 32, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 38:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of any and all operational or administrative computer or otherwise generated documents and

materials in reference to the daily, weekly, or monthly operations of Bryson Juriel

Bowers and/or the vehicle operated on your behalf of or during his employment with

you, or contracted with you, inclusive of driver(s), tractor(s), and trailer(s)

maintenance, operational and dispatch generated data showing trips made or loads

transported by Bowers from one month before the collision up to when the collision

occurred on September 14, 2018.

The term "trip" in this request means the transportation and/or movement of

one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to

final destination(s) and includes the travel "empty or unloaded" from that

destination point to the next point or location of loading, end of trip, or new trip

origin.

The term "operational documents" in this request includes the following

applicable to the records generated for **each** "trip" made by you during the time

period requested:

A. Complete and clearly readable copies of e-mail communications, trip reports, trip envelopes, daily loads delivered or picked up or any otherwise described work reports, work schedule reports, fuel purchased reports, or any reports made by any of the Defendants, inclusive of daily, weekly, or monthly cargo transported, time and/or distance traveled reports or work records, excluding only those documents known as "driver's daily logs" or driver's record of duty status.

B. Complete and clearly readable copies of receipts for any trip expenses or purchases made by Bowers or Co-Driver during a trip regardless of type of purchase, such as fuel, weighing of vehicle, food, lodging, equipment maintenance, repair or equipment cleaning, special or oversize permits, bridge and/or toll road, loading or unloading cost, or other receipts regardless of the type of object or services purchased.

C.   Complete and clearly readable copies of cargo pickup or delivery orders prepared by any of the Defendants, transportation brokers, involved shippers or receivers, motor carriers, operations/dispatch personnel, drivers, or other persons or organizations relative to the cargo transported and operations of your vehicle.

D.   Complete and clearly readable copies of any and all written requests, letters, instructions, Hazardous Materials Shipping Papers, or orders for transportation of cargo prepared by any Defendant, transportation brokers, involved shippers or receivers, motor carriers, operations/dispatch or sales personnel, drivers, or other persons or organizations relative to the operations of your vehicle.

E.   Complete, unredacted, and clearly readable copies of all bills of lading and/or manifest prepared or issued by any shipper, broker, transporting motor carriers personnel, receivers of cargo, or any of the Defendants. This specifically includes readable and complete copies of bills of lading, manifest, or other documents regardless of form or description, that show signed receipts for cargo delivered along with any other type of document that may show dates and times of cargo pickup or delivery relative to the operations of your vehicle.

F.   Complete, unredacted and clearly readable copies of all equipment or cargo loading and unloading or detention of equipment records along with any other documents showing cargo pickup and delivery dates, and times or delays and/or detention of equipment relative to operations of your vehicle.

G.   Complete, unredacted, and clearly readable copies of all cargo transported freight bills, Pro's or otherwise described similar documents inclusive of all signed or unsigned cargo pickup and delivery copies that indicate pick up or delivery of cargo by Bowers or a Co-Driver.

H.   Complete, unredacted, and clearly readable copies of all written instructions, orders, advice, or other documents given to you in reference to cargo transported, routes to travel, locations to purchase fuel, cargo pickup, and delivery times issued by you or any Defendant, shippers, receivers, or any other persons or organizations.

I.   Complete, unredacted, and clearly readable copies of dispatch and/or operational records indicating assignment of equipment and drivers to specific cargo pickup, transportation and delivery, dates and times of pickup and delivery, movement of cargo, shippers and receivers of

46

cargo, and any other related operational records or documents, regardless of form. This specifically includes all dispatch and operational type computer generated documents and materials indicating the operations or movements of your vehicle, or Bowers' activities.

J. Complete, unredacted, and clearly readable copies of any call-in records, or otherwise described written records indicating any communications between Bowers, Co-Driver(s), and you.

K. Complete, unredacted, and clearly readable copies of all accounting records, merchandise purchased, cargo transportation billings, or invoices and subsequent payments or otherwise described records indicating billings for transportation of cargo or payment for services performed for you by Bowers and Co-Drivers.

L. Complete, unredacted, and clearly readable copies of all initial or rough trip check-in or financial settlement sheets along with all final trip accounting documents, and computer generated documents or printouts showing expenses and payment(s) for service(s) or salary to Bowers in reference to a trip or trips. This specifically includes any summary type documents showing all payments made to Bowers and Co-Driver(s) regardless of the purpose of payment or period of time payment was made for.

M. Complete, unredacted, and clearly readable copies of any and all motor carrier or trip fuel mileage and purchase reports or records created by Bowers. This specifically includes all documents and computer generated documents, regardless of form or subject, received from any source such as the organization known as "COMCHECK," or "EFS" generated for or by you or other Defendants showing date, time, and location of fuel or other purchases by Bowers or Co-Drivers while on the trips requested herein.

N. Complete, unredacted, and clearly readable copies of all checks or otherwise described negotiable instruments issued to Bowers or Co-Driver(s) given in payment as trip advances, loans, or for any other purpose inclusive of checks issued for employee payroll, and/or for owner/operator or trip lessor service in the possession of any of the Defendants. Specifically copies of both the front and back of each check and/or COMCHECK issued to your Driver or Co-Driver(s) is requested.

O. Complete, unredacted, and clearly readable copies of any and all state special fuel or oversized permits and any related documents or

2529968-v1

requests issued to or by any state agency to transport cargo over their territories regardless of the form of the permit. The receipt acknowledging payment for the permit(s) issued by any governmental agency is specifically requested that relate to the movement of Bowers and/or Co-Driver(s).

P.      Complete, unredacted, and clearly readable copies of any and all trip leases or trip lease contracts involving Bowers or Co-Drivers along with all related documentation issued to or created or received by any of the Defendants. Specifically, this includes any trip leases negotiated between any of the Defendants and/or any other motor carrier or their drivers inclusive of all related documentation thereto. Basically, "related documentation" consist of any documents created or generated in reference to the trip lease(s) and in addition, driver's daily logs or record of duty status, driver's daily condition reports, motor carrier certification of driver's qualification, and includes other documents that relate to the billing and payment for such movement of freight, along with all other types of documentation regardless of form or description, relative to each occurrence involving the service and activities of Bowers or Co-Driver(s).

Q.      Complete, unredacted, and clearly readable copies of all weigh station records and all scale receipts during the time period requested..

R.      Complete and clearly readable copies of any and all other operational documents, as well as all other notes, diaries, notebooks, computer files, etc. created or received by any of the Defendants, or any other persons or organizations, regardless of form or description and not defined herein, in the possession of you or any of the Defendants, and relative to the operations, activities, movements and trip accomplished by Bowers or Co-Driver(s) during the time period requested.

You are requested to follow closely and to group and identify all documents produced by each trip occurring during the requested time periods.

**RESPONSE:** Objection. This request is not reasonably understandable in its current form.     To the extent it is comprehensible, it is overbroad and not proportional to the needs of this case. It also appears to request financial records that would be confidential. Please note that Mr. Bowers was not an over-the-road

driver for New Bern.  Without waiving the objection, if you will please clarify and narrow the request, New Bern will consider any reasonable request and, if appropriate, endeavor to respond.

**REQUEST FOR PRODUCTION NO. 39:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of any and all documents relating to U.S. Department of Transportation (DOT) safety ratings or enforcement proceedings, including copies of DOT and state reports or recommendations, correspondence, documents pertaining to safety, hours of service records, false log violations, or to training and discipline actions taken related to compliance or safety reviews and subsequent violations.

The term "hours of service records" in this request means any and all documents created in reference to 49 C.F.R. § 395, including, Bowers' record of duty status or daily drivers' logs, time worked cards or other time worked records or summaries, your administrative log audits and/or 70/60-hour log audits along with any records or reports of violations, or any otherwise described documents advising any of Bowers' or a Co-Driver's hours of service violations. This specifically includes all advice, reprimands or warnings sent to Bowers or any of your Co-Driver(s) for violations of 49 C.F.R. § 395, "Hours of Service of Drivers" regulations by or on behalf of you or other parties over which you have control.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or

operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

**RESPONSE:** Objection.  This request is overbroad, vague, and to the extent it *can* be understood, not proportional to the needs of this case.  Please note that Mr. Bowers was not an over-the-road driver.

**REQUEST FOR PRODUCTION NO. 40:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of written instructions or examples issued by you to Bryson Juriel Bowers in reference to completion of company reports, driver's trip reports, driver's record of duty status (logs) or time worked records or hours of service records, routes to travel, or when drivers were required to call in, inclusive of any other instructional documents relating to trips or loads transported.

The term "trip" in this request means the transportation and/or movement of one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to final destination(s) and includes the travel "empty or unloaded" from that destination point to the next point or location of loading, end of trip, or new trip origin.

The term "hours of service records" in this request means any and all documents created in reference to 49 C.F.R. § 395, including, Bowers' record of duty status or daily drivers' logs, time worked cards or other time worked records or summaries, your administrative log audits and/or 70/60-hour log audits along with any records or reports of violations, or any otherwise described documents advising

any of Bowers' or a Co-Driver's hours of service violations. This specifically includes all advice, reprimands or warnings sent to Bowers or any of your Co-Driver(s) for violations of 49 C.F.R. § 395, "Hours of Service of Drivers" regulations by or on behalf of you or other parties over which you have control.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

**RESPONSE:**  Please see response to Request for Production No. 39, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 41:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of any and all state Tractor and/or Trailer fuel or cab cards, state prorate registrations, or state vehicle registrations in your possession, or in the possession of any of the Defendants over which you have control, and applicable to the operation of the Tractor and Trailer when the collision occurred on September 14, 2018.

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

51

**RESPONSE:**  Please see response to Request for Production no. 39, which is incorporated herein. Please note also that Mr. Bowers was not an over-the-road driver and the truck was not used by Mr. Bowers to make interstate deliveries

**REQUEST FOR PRODUCTION NO. 42:**  Please produce for inspection and copying complete and unredacted purchase printouts or other records from fuel vendors for Bryson Juriel Bowers for the 30 days before the collision on September 14, 2018, and including the day of the collision.

**RESPONSE:**  Please note that Mr. Bowers was not an owner-operator or over-the-road driver  and as noted elsewhere in these discovery responses, not responsible for the purchase of fuel from vendors.

**REQUEST FOR PRODUCTION NO. 43:**  Please produce for inspection and copying complete and unredacted policies on call-in records and all call-in records for Bryson Juriel Bowers for the 30 days before the collision on September 14, 2018, and including the day of the collision.

**RESPONSE:**   This request – particularly the reference to "policies on call-in records" - is vague; consequently, objection is made.

**REQUEST FOR PRODUCTION NO. 44:**  Please produce for inspection and copying complete and unredacted policies on dispatch records as well as all dispatch records for Bryson Juriel Bowers for the 30 days before the collision on September 14, 2018, and including the day of the collision.

**RESPONSE:** Please note that Mr. Bowers was not an over-the-road driver who would be dispatched on various assignments.  Moreover, the term "policies on

dispatch records" is vague. Thus, to the extent this request is understood, objection is made.

**REQUEST FOR PRODUCTION NO. 45:**  Please produce for inspection and copying complete and unredacted policies on out of service tractor, trailers, and vehicles as well as all out of service records for your Tractor, and Trailer from the date Bryson Juriel Bowers began employment with you until the collision occurred on September 14, 2018.

The term "Tractor" or "Vehicle," in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred, which may also be referred to as your "Vehicle."

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:**  Objection.  This is vague.  Please clarify what you mean by "policies on out of service tractor, trailers, and vehicles" and, if that is reasonably probative of any issue in this case, New Bern will attempt to retrieve.   If the information is proprietary, it would have to be produced pursuant to protective order.

**REQUEST FOR PRODUCTION NO. 46:**  Please produce for inspection and copying complete and unredacted policies on driver log auditing as well as all driver log audits for Bryson Juriel Bowers from the date he began employment with you until the date of the collision on September 14, 2018.

2529968-v1

**RESPONSE:** Objection.  This is vague.  Please clarify what you mean by "policies on driver log auditing" and if that is reasonably probative of any issue in this case, New Bern will attempt to retrieve. If the information sought turns out to be proprietary, it will have to be produced pursuant to protective order.

**REQUEST FOR PRODUCTION NO. 47:** Please produce for inspection and copying complete and unredacted policies on hours of service reporting and auditing as well as all hours of service reports and audits for Bryson Juriel Bowers from the date he began employment with you until the date of the collision on September 14, 2018.

The term "hours of service records" in this request means any and all documents created in reference to 49 C.F.R. § 395, including, Bowers' record of duty status or daily drivers' logs, time worked cards or other time worked records or summaries, your administrative log audits and/or 70/60-hour log audits along with any records or reports of violations, or any otherwise described documents advising any of Bowers' or a Co-Driver's hours of service violations. This specifically includes all advice, reprimands or warnings sent to Bowers or any of your Co-Driver(s) for violations of 49 C.F.R. § 395, "Hours of Service of Drivers" regulations by or on behalf of you or other parties over which you have control.

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

**RESPONSE:** This request is vague, convoluted, and therefore objectionable. Please note that Mr. Bowers was not an over-the-road driver. It is also overbroad to the extent that it seeks information on "co-drivers" and "trainers." Without waiving any objection, if you will please clarify what is meant by "policies on hours of service and auditing" New Bern will consider and attempt to provide probative information, if any.

**REQUEST FOR PRODUCTION NO. 48:** Please produce for inspection and copying all leases relating to the Tractor and Trailer involved in the collision.

The term "Tractor" in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred.

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** Please note that Mr. Bowers was not an owner/operator and was not leasing the vehicle. To the extent any other leases were in effect at the time of the accident, then (subject to redaction for irrelevant financial information) copies will be produced.

**REQUEST FOR PRODUCTION NO. 49:** Please produce for inspection and copying all documents pertaining to the load your Tractor and Trailer were carrying at the time of the collision on September 14, 2018, including the load's weight; the name and address of the person or company that shipped the load; the name and address of the person or company that was to receive the load; the date, time, and location where the load was picked up from that your vehicle was hauling

at the time of the collision; the location where the load was to be delivered and the scheduled delivery date and time; the type of shipment, *i.e.*, F.O.B., C.O.D., etc.; and the person(s) who loaded the shipment.

The term "Tractor" in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred.

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** Objection. This request seems to have been included by mistake insofar as this vehicle was not being driven over-the-road to transport a "load" for the public. Without waiving any objection, the day's trip originated that morning adjacent to New Bern's facility in Maumelle, AR.

**REQUEST FOR PRODUCTION NO. 50:** Please produce for inspection and copying complete and unredacted documents relating to the Tractor and Trailer Bryson Juriel Bowers was operating at the time of the collision showing their make, model, year of manufacture, date of purchase or lease, weight, length, width, logged miles, maintenance history, damage history, license numbers, placards, current owner and location, and all accessory equipment installed including but not limited to email contact equipment, on-board data recorders, data logging units, electronic control module, vehicle control module; Qualcomm OmniExpress, Terrion FleetView or other GPS positioning and/or communication system; Qualcomm OmniTRACS or other satellite based tracking and communication system; transponder; camera system; tire pressure monitoring; EatonVorad or other radar-based collision

warning system; EatonVorad SmartCruise or other radar based adaptive cruise control; Eaton Vehicle Information Management System; rollover control system; lane guidance system; anti-lock brake system or electronic brake system.

**RESPONSE:** Objection. There is no probative issue in this case that would involve a collision warning system involving New Bern's equipment, cruise control, rollover, Vorad, or braking system. Please also see response to Request No. 32, which is incorporated herein. Without waiving any objection, a copy of the police report contains some of the information responsive to this request and, if Plaintiff does not have a copy, then a copy will be produced.

**REQUEST FOR PRODUCTION NO. 51:** Please produce for inspection and copying complete and unredacted policies on collision reporting or investigation, collision review committees, or determinations of whether a collision was preventable.

**RESPONSE:** Objection. This request is incomprehensible and, to the extent, an interpretation can be deduced, it seeks information that has no bearing on any probative issue in this case.

**REQUEST FOR PRODUCTION NO. 52:** Please produce for inspection and copying complete and unredacted collision reports, collision investigation or collision review committee records, or determinations of whether any collision caused by Bryson Juriel Bowers during his employment with you was preventable, including the one at issue in this case.

2529968-v1

**RESPONSE:** Objection. This request is vague and, to the extent it can be understood, seeks materials that would have been prepared in anticipation of litigation. It is also temporally overbroad. The materials also would not be calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 53:** Please produce for inspection and copying complete and unredacted policies on orientation, periodic, and remedial training and verification of such training, including training on issues such as fatigue, lane maintenance, Tractor and Trailer weight, route selection to complete trips, collision reporting requirements, etc., from the date Bryson Juriel Bowers began his employment with you until the collision occurred on September 14, 2018.

The term "trip" in this request means the transportation and/or movement of one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to final destination(s) and includes the travel "empty or unloaded" from that destination point to the next point or location of loading, end of trip, or new trip origin.

The term "Tractor" in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred.

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** This request is vague and therefore objectionable. Please clarify what is meant by "policies on orientation, periodic, and remedial training and verification of such training" and New Bern will attempt to locate. Any

58

company policies would likely be considered proprietary and would have to be produced subject to a protective order.

**REQUEST FOR PRODUCTION NO. 54:**  Please produce for inspection and copying complete and unredacted policies on driver's license record checks, notification to drivers of the results of such checks, and retraining requirements for moving violations, as well as all records pertaining to driver's license record checks, notification of such checks, and any retraining requirements for Bryson Juriel Bowers from the date he began his employment with you until the collision occurred on September 14, 2018.

**RESPONSE:**  Objection.  This request is incomprehensible in its present form. Without waiving any objection, upon entry of a suitable protective order, appropriate portions of Mr. Bowers' driver qualification file (including MVR checks) will be produced

**REQUEST FOR PRODUCTION NO. 55:**  Please produce for inspection and copying your complete and unredacted company policies concerning inspection policies and procedures of all tractors and trailers, including the tractor and trailer Bryson Juriel Bowers was driving when the collision occurred on September 14, 2018, to include physical inspection as well as the electronic retrieval from on-board computers, communications equipment, satellite tracking, and other electronic equipment, from the date Bowers began his employment with you until the collision occurred on September 14, 2018.

2529968-v1

**RESPONSE:** Objection. This request – particularly the request for "company policies concerning inspection policies" - is incomprehensible.

**REQUEST FOR PRODUCTION NO. 56:** Please produce for inspection and copying your complete and unredacted company retention policies concerning documentary information and electronically retrieved data from the date Bowers began his employment with you until the collision occurred on September 14, 2018.

**RESPONSE:** Objection. This request is very unclear. If you will please clarify what you are seeking, then New Bern will endeavor to locate any reasonable related request and produce, subject to an appropriate protective order.

**REQUEST FOR PRODUCTION NO. 57:** Please produce for inspection and copying your complete and unredacted Corporate, Partnership, or LLC Agreement, as well as your Articles of Incorporation, if any, which were in effect when the collision occurred on September 14, 2018.

**RESPONSE:** Objection. This is not calculated to lead to the discovery of admissible evidence and apparently seeks corporate information that would be proprietary.

**REQUEST FOR PRODUCTION NO. 58:** Please produce for inspection and copying your complete and unredacted documents showing the corporate relationship between you and PepsiCo, Inc. in effect when the collision occurred on September 14, 2018.

**RESPONSE:** Objection. This is overbroad. Without waiving the objection, please see Doc. 8 and Declaration of Charles Biener (Doc 8-1)

2529968-v1

**REQUEST FOR PRODUCTION NO. 59:** Please produce for inspection and copying all certificates of authority, license, or permit issued by the Interstate Commerce Commission, the U.S. Department of Transportation, any state agency or any other authority, which were in effect when the collision occurred on September 14, 2018.

**RESPONSE:** Objection. This request is vague, overbroad and apparently comes from a set of form request that has been long rendered obsolete given the dissolution of the Interstate Commerce Commission many decades ago. Moreover, the request does not endeavor to clarify what certificates, licenses, or permits issued to what entity are being requested. Without waiving any objection, New Bern's DOT number was 692947

**REQUEST FOR PRODUCTION NO. 60:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of your officers', executives' or administrators' notices, directives, bulletins, or other instructions in reference to the day-to-day motor carrier operating and safety procedures to be followed by your company personnel, managers, supervisors, dispatchers and drivers, including any document relative to disciplinary policies or procedures for late freight delivery, motor fleet safety or failure to comply Federal Motor Carrier Safety Regulations (49 C.F.R. §§ 380-397) in existence and effective when the collision occurred on September 14, 2018.

**RESPONSE:** Objection. This request is compound and incomprehensible. To the extent it can be understood, it is overbroad.

**REQUEST FOR PRODUCTION NO. 61:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of all generated motor carrier transportation scheduling, dispatch, load or operational daily or monthly summary data produced by you from one month before the collision on September 14, 2018 through the date of the collision relative to Bryson Juriel Bowers' operations and/or Co-Drivers. This specifically includes any documents showing information such as load or trip numbers assigned, equipment number(s), date of cargo pick up or delivery, name of cargo shippers/receivers, drivers, dates of transport by other motor carrier organizations and/or your drivers assigned to transport cargo on behalf of other motor carriers (trip leasing).

The term "Co-Driver" in this request means any person(s) driving or riding with Bryson Juriel Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

The term "trip" in this request means the transportation and/or movement of one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to final destination(s) and includes the travel "empty or unloaded" from that destination point to the next point or location of loading, end of trip, or new trip origin.

**RESPONSE:** Objection.  This request seems to have been included by mistake.  Please note that Mr. Bowers was not an over-the-road driver who was hauling cargo for third parties.  There were no third-party shippers, receivers, nor

was any "trip leasing" involved.  To the extent it seeks information on other drivers and trainers, it is not calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 62:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of one original blank form of each of the operational documents or forms utilized by you, or any of the Defendants over whom you have control, in the operations, movement or control of cargo transported, determination of wages and/or trip settlement with drivers, which were in effect when the collision occurred on September 14, 2018, excluding only "negotiable instruments" such as checks. The purpose of this request is the Plaintiff to develop and understand the methods, manner, and way you operate and control your transportation of freight, drivers and equipment.

The term "Driver" or "Drivers" in this request means Bryson Juriel Bowers, and any person employed by, or contracted for or with you, including persons known as Co-Drivers, driver trainer, independent contractors, owner operators or trip lessors, and includes persons furnished you or other Defendants as drivers by any other person or organization who perform driving services on their behalf.

The term "trip" in this request means the transportation and/or movement of one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to final destination(s) and includes the travel "empty or unloaded" from that destination point to the next point or location of loading, end of trip, or new trip origin.

2529968-v1

The term "Co-Driver" in this request means any person(s) driving or riding with Bowers from time to time in over the road motor carrier equipment, owned or operated by you, and from time to time working for or with Bowers in the capacity of a Co-Driver and/or driver trainer.

The term "operational documents" in this request includes the following applicable to the records generated for **each** "trip" made by you during the time period requested:

A.  Complete and clearly readable copies of e-mail communications, trip reports, trip envelopes, daily loads delivered or picked up or any otherwise described work reports, work schedule reports, fuel purchased reports, or any reports made by any of the Defendants, inclusive of daily, weekly, or monthly cargo transported, time and/or distance traveled reports or work records, excluding only those documents known as "driver's daily logs" or driver's record of duty status.

B.  Complete and clearly readable copies of receipts for any trip expenses or purchases made by Bowers or Co-Driver during a trip regardless of type of purchase, such as fuel, weighing of vehicle, food, lodging, equipment maintenance, repair or equipment cleaning, special or oversize permits, bridge and/or toll road, loading or unloading cost, or other receipts regardless of the type of object or services purchased.

C.  Complete and clearly readable copies of cargo pickup or delivery orders prepared by any of the Defendants, transportation brokers, involved shippers or receivers, motor carriers, operations/dispatch personnel, drivers, or other persons or organizations relative to the cargo transported and operations of your vehicle.

D.  Complete and clearly readable copies of any and all written requests, letters, instructions, Hazardous Materials Shipping Papers, or orders for transportation of cargo prepared by any Defendant, transportation brokers, involved shippers or receivers, motor carriers, operations/dispatch or sales personnel,

2529968-v1

drivers, or other persons or organizations relative to the operations of your vehicle.

E.    Complete, unredacted, and clearly readable copies of all bills of lading and/or manifest prepared or issued by any shipper, broker, transporting motor carriers personnel, receivers of cargo, or any of the Defendants. This specifically includes readable and complete copies of bills of lading, manifest, or other documents regardless of form or description, that show signed receipts for cargo delivered along with any other type of document that may show dates and times of cargo pickup or delivery relative to the operations of your vehicle.

F.    Complete, unredacted and clearly readable copies of all equipment or cargo loading and unloading or detention of equipment records along with any other documents showing cargo pickup and delivery dates, and times or delays and/or detention of equipment relative to operations of your vehicle.

G.    Complete, unredacted, and clearly readable copies of all cargo transported freight bills, Pro's or otherwise described similar documents inclusive of all signed or unsigned cargo pickup and delivery copies that indicate pick up or delivery of cargo by Bowers or a Co-Driver.

H.    Complete, unredacted, and clearly readable copies of all written instructions, orders, advice, or other documents given to you in reference to cargo transported, routes to travel, locations to purchase fuel, cargo pickup, and delivery times issued by you or any Defendant, shippers, receivers, or any other persons or organizations.

I.    Complete, unredacted, and clearly readable copies of dispatch and/or operational records indicating assignment of equipment and drivers to specific cargo pickup, transportation and delivery, dates and times of pickup and delivery, movement of cargo, shippers and receivers of cargo, and any other related operational records or documents, regardless of form. This specifically includes all dispatch and operational type computer generated documents and materials indicating the operations or movements of your vehicle, or Bowers' activities.

J.      Complete, unredacted, and clearly readable copies of any call-in records, or otherwise described written records indicating any communications between Bowers, Co-Driver(s), and you.

K.      Complete, unredacted, and clearly readable copies of all accounting records, merchandise purchased, cargo transportation billings, or invoices and subsequent payments or otherwise described records indicating billings for transportation of cargo or payment for services performed for you by Bowers and Co-Drivers.

L.      Complete, unredacted, and clearly readable copies of all initial or rough trip check-in or financial settlement sheets along with all final trip accounting documents, and computer generated documents or printouts showing expenses and payment(s) for service(s) or salary to Bowers in reference to a trip or trips. This specifically includes any summary type documents showing all payments made to Bowers and Co-Driver(s) regardless of the purpose of payment or period of time payment was made for.

M.      Complete, unredacted, and clearly readable copies of any and all motor carrier or trip fuel mileage and purchase reports or records created by Bowers. This specifically includes all documents and computer generated documents, regardless of form or subject, received from any source such as the organization known as "COMCHECK," or "EFS" generated for or by you or other Defendants showing date, time, and location of fuel or other purchases by Bowers or Co-Drivers while on the trips requested herein.

N.      Complete, unredacted, and clearly readable copies of all checks or otherwise described negotiable instruments issued to Bowers or Co-Driver(s) given in payment as trip advances, loans, or for any other purpose inclusive of checks issued for employee payroll, and/or for owner/operator or trip lessor service in the possession of any of the Defendants. Specifically copies of both the front and back of each check and/or COMCHECK issued to your Driver or Co-Driver(s) is requested.

O.      Complete, unredacted, and clearly readable copies of any and all state special fuel or oversized permits and any related documents or requests issued to or by any state agency to transport cargo over their territories regardless of the form of the permit. The receipt acknowledging payment for the permit(s) issued by any

governmental agency is specifically requested that relate to the movement of Bowers and/or Co-Driver(s).

P.   Complete, unredacted, and clearly readable copies of any and all trip leases or trip lease contracts involving Bowers or Co-Drivers along with all related documentation issued to or created or received by any of the Defendants. Specifically, this includes any trip leases negotiated between any of the Defendants and/or any other motor carrier or their drivers inclusive of all related documentation thereto. Basically, "related documentation" consist of any documents created or generated in reference to the trip lease(s) and in addition, driver's daily logs or record of duty status, driver's daily condition reports, motor carrier certification of driver's qualification, and includes other documents that relate to the billing and payment for such movement of freight, along with all other types of documentation regardless of form or description, relative to each occurrence involving the service and activities of Bowers or Co-Driver(s).

Q.   Complete, unredacted, and clearly readable copies of all weigh station records and all scale receipts during the time period requested.

R.   Complete and clearly readable copies of any and all other operational documents, as well as all other notes, diaries, notebooks, computer files, etc. created or received by any of the Defendants, or any other persons or organizations, regardless of form or description and not defined herein, in the possession of you or any of the Defendants, and relative to the operations, activities, movements and trip accomplished by Bowers or Co-Driver(s) during the time period requested.

You are requested to follow closely and to group and identify all documents produced by each trip occurring during the requested time periods.

**RESPONSE:**  Please see response to Request No. 61, which is incorporated herein.  Moreover, this request is overbroad and not proportional to the needs of this case.  As noted elsewhere, Mr. Bowers was not serving as an over-the-road driver.

2529968-v1

**REQUEST FOR PRODUCTION NO. 63:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of the United States Federal Income Tax forms, copies of payroll and other checks, check stubs, and all other available payroll information and pay documents furnished to Bryson Juriel Bowers, or in reference to his service for you for the pay period when the collision occurred on September 14, 2018, including the tax forms for the tax year in which the collision occurred, and the tax forms for the tax year before the year of the collision.

**RESPONSE:**  Objection.  This request apparently seeks personal financial information and tax data that is confidential and that would not be germane to any issue of substance in this case.

**REQUEST FOR PRODUCTION NO. 64:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of the federally required insurance forms (MCS-82 and 90) required to be in your possession in accordance with 49 C.F.R. § 387.7(d), which was in effect when the collision occurred on September 14, 2018.

**RESPONSE:**  Objection.  Defendant has previously shared with Plaintiff insurance declarations information.  *See* initial disclosures.

**REQUEST FOR PRODUCTION NO. 65:**  Please produce for inspection and copying complete, unredacted, and clearly readable copies of all documents received from or sent to any "compliance or fleet safety" employee of yours, or agent of your parent company, if applicable, or independent consultant(s), representing

68

the interest of you or Bryson Juriel Bowers. This includes all correspondence to and from, compliance or terminal audits or reports, and all otherwise described documentation originated from one month before the collision on September 14, 2018, to one year after the collision.

**RESPONSE:** Objection. This request is vague and, to the extent its object can be guessed at, it is substantively and temporally overbroad. It does not even limit itself to communications dealing with accidents, much less this accident, nor is it limited to anything having to do with Mr. Bowers. Nor is it limited to times germane to the accident.

**REQUEST FOR PRODUCTION NO. 66:** Please produce in electronic format (.pdf) all information generated by the use of on-board computers, communication equipment, satellite tracking equipment, GPS and all other accessory equipment referred to within the preceding Request for Production of Documents. If a .pdf electronic format is not possible, please advise which electronic formats are available.

**RESPONSE:** Please see response to Request No. 65, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 67:** Please attach all of your Collision Review Committee's minutes, notes, letters, reprimands and other written or electronic records related to the events concerning the collision on September 14, 2018.

2529968-v1

**RESPONSE:** To the best New Bern understands this request, not applicable.

**REQUEST FOR PRODUCTION NO. 68:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of the following:

A.      Your log audit program or policy manual;

B.      Your vehicle maintenance policy or procedure manual;

C.      Your document retention/destruction policy;

D.      Your dispatch manual;

E.      Your safety manual;

F.      Your operations manual; and

G.      Your training manual and driver education materials.

**RESPONSE:** Please see response to Request No. 32, which is incorporated herein. It appears that no effort has been made to limit the scope of the request to the facts of this case and any requested information would be proprietary. Consequently, objection is made.

**REQUEST FOR PRODUCTION NO. 69:** Please produce for inspection and copying complete, unredacted, and clearly readable copies of the following from when the collision occurred up to the present: all certificates of authority, licenses or permits issued by the Interstate Commerce Commission, the U.S. Department of Transportation, and any state agency or any other trucking authority.

**RESPONSE:** Please see response to Request for Production No. 59, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 70:**  Please produce for inspection and copying your complete and unredacted written policies for reviewing your motor fleet safety and compliance programs status on a periodic basis, as well as all documents reflecting such a review, within the last ten (10) years.

**RESPONSE:** Objection.  This is vague and both substantively and temporally overbroad.  Nor is the request even remotely proportional to the needs of this case.

**REQUEST FOR PRODUCTION NO. 71:**  Please produce for inspection and copying the complete and unredacted reports downloaded from on-board computers, "black boxes," satellite tracking, transponders, or other tracking, diagnostic, or writable electronic equipment on the tractor or trailer involved in the collision on September 14, 2018. Please also produce the operator's manual for the brand and model of all such equipment. If such information is no longer available, please produce for inspection and copying your hard copy and/or electronic record retention policies for such equipment, as well as documentation reflecting your efforts to retrieve and/or preserve the information contained in such equipment following the collision.

The term "Tractor" in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred.

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

71

**RESPONSE:** As best can be determined, given the fact that Ms. Rowan denied being injured at the scene and the nature of the collision, there was no belief that EDR related data would need to be downloaded. To the extent that this request seeks data other than that form of data, objection to the overbroad and vague nature of the request.

**REQUEST FOR PRODUCTION NO. 72:** Please produce for inspection and copying your complete and unredacted policies reflecting how on-board computers, "black boxes," satellite tracking, transponders, or other tracking, diagnostic, or writable electronic equipment on the tractor or trailer involved in the collision on September 14, 2018 was used to control any hours violations committed by Bryson Juriel Bowers, and/or driving activities.

The term "Tractor" in this request means the over the road vehicular power unit being operated by Bryson Juriel Bowers at the time the collision occurred.

The term "Trailer" in this request means the Trailer attached to the power unit being operated by Bowers at the time the collision occurred.

**RESPONSE:** Objection to the vagueness and lack of foundation for this request – particularly insofar as it improperly presumes that Mr. Bowers had committed any "hours" violations (which New Bern presumes is meant to suggest "hours-of-service" violations). Please note that this accident took place only a few hours after Mr. Bowers had come on duty that day.

**REQUEST FOR PRODUCTION NO. 73:** To the extent not otherwise produced herein, please produce for inspection and copying complete, unredacted,

2529968-v1

and clearly readable copies of any and all written documents, letters, directives, memorandums, notes, or notices from you to Bryson Juriel Bowers, or from Bowers to another Defendant or trucking company within your control, not produced in accordance with any other request herein, related to the collision on September 14, 2018.

**RESPONSE:**  To the extent that this seeks communications made in light of the ongoing lawsuit (including any past or future communications by counsel), objection is made. Without waiving the objection, and as best this request can be understood, not applicable.

**REQUEST FOR PRODUCTION NO. 74:**  To the extent not otherwise requested by these Requests for Production, please produce for inspection and copying complete, unredacted, and clearly readable copies of all, company manuals, dispatch policies, employee handbooks, films, job descriptions, training materials, company issued rules and regulations, directives, notices or posted notices in effect when the collision occurred  on September 14, 2018, created or utilized by you in controlling or directing Bryson Juriel Bowers' training operations, work, activities, job performance, timely pickup and delivery of cargo, safety or compliance with regulations inclusive of any educational materials in reference to the Federal Motor Carrier Safety Regulations and any Trucking Company Motor Carrier Fleet Vehicular Safety program materials in place and effective when the collision occurred.

2529968-v1

**RESPONSE:** Objection. This request is overbroad and, to the extent it can be understood would seek proprietary materials – many of which would have no relevance to the facts of this accident.

**REQUEST FOR PRODUCTION NO. 75:** To the extent not otherwise requested by these Requests for Production, please provide complete and unredacted copies of your personnel file for Bryson Juriel Bowers, and his supervisor, including their full names and any other names by which they have been known; present and permanent mailing address; level of education and degrees earned together with the names and addresses of all schools, colleges, and vocational training attended, if any, with dates of attendance; a description of military service, if any, with rank, any medals awarded, and whether honorably discharged; length of time engaged as a truck driver; the name, address and telephone number of their employers since graduation from high school on file, and for each such employment their job duties, rate of pay, dates of employment and reasons for termination of each such employment.

**RESPONSE:** Objection. The records of Mr. Bowers' supervisor are not reasonably calculated to lead to admissible evidence and yet they would require disclosure of confidential information.  Likewise, while pertinent portions of the personnel file of Mr. Bowers, might be germane and potentially discoverable, they cannot be produced absent entry of a suitable protective order.

74

**REQUEST FOR PRODUCTION NO. 76:**  Please produce the name, address, and job title for the employee and/or agent who hired Bryson Juriel Bowers.

**RESPONSE:**  Several people were involved in the hiring process.  If you will please clarify what specific step you are referring to, New Bern will endeavor to supply the requested information. Plaintiff has apparently attempted to evade the limits on interrogatories under Rule 30(a)(1) by characterizing this request for information as a "request for production."

**REQUEST FOR PRODUCTION NO. 77:**  Please produce the name, address, and job title for the employee and/or agent who provided Driver training to Bryson Juriel Bowers.

**RESPONSE:**  Please see response to Interrogatory No. 18

**REQUEST FOR PRODUCTION NO. 78:**  Please produce the name, address, and job title for the employee and/or agent who had safety and training oversight (Director of Safety) of Bryson Juriel Bowers.

**RESPONSE:**  Objection. Plaintiff has apparently attempted to evade the limits on Interrogatories under rule 30(a)(1) by characterizing this request for information as a "request for production.

**REQUEST FOR PRODUCTION NO. 79:**  Please produce the name, address, and job title for the employee and/or agent who investigated the collision.

**RESPONSE:**  Please see response to Request for Production No. 78, which is incorporated herein.

2529968-v1

**REQUEST FOR PRODUCTION NO. 80:**  Please produce the names, addresses, and job titles for the members of your Collision Review Committee when the collision occurred on September 14, 2018, up to the present date.

**RESPONSE:**  Please see response to Request for Production No. 78, which is incorporated herein

**REQUEST FOR PRODUCTION NO. 81:**  Please produce the names, addresses, and job titles for dispatchers responsible for Bryson Juriel Bowers for the trip he was making when the collision occurred on September 14, 2018, up to the present date.

The term "trip" in this request means the transportation and/or movement of one load of cargo and/or vehicle, regardless of load size or type, from its origin(s) to final destination(s) and includes the travel "empty or unloaded" from that destination point to the next point or location of loading, end of trip, or new trip origin.

**RESPONSE:**  Please see response to Request for Production No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 82:**  Please produce the name, address, and job title for the employee and/or agent who was responsible for ensuring Bryson Juriel Bowers' compliance with DOT hours of service regulations when the collision occurred on September 14, 2018, and who said person is currently.

**RESPONSE:** Please see Response to Request No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 83:** Please produce the name, address, and job title for the employee and/or agent who was the supervisor of Bryson Juriel Bowers when the collision occurred on September 14, 2018, and who said person is currently.

**RESPONSE:** Please see Response to Request No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 84:** Please produce the name, address, and job title for the employee and/or agent who was the medical review officer when the collision occurred on September 14, 2018, and who said person is currently.

**RESPONSE:** Please see Response to Request No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 85:** Please produce the name, address, and job title for the employee and/or agent who was the head of dispatch when the collision occurred on September 14, 2018, and who said person is currently.

**RESPONSE:** Please see Response to Request No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 86:** Please produce the name, address, and job title for the employee and/or agent who was the chief of operations

2529968-v1

when the collision occurred on September 14, 2018, and who said person is currently.

**RESPONSE:**  Please see Response to Request No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 87:**  Please produce the name, address, and job title for the employee and/or agent who was the head of maintenance for the tractor or trailer operated by Bryson Juriel Bowers when the collision occurred on September 14, 2018, and who said person is currently.

**RESPONSE:**  Please see Response to Request No. 78 and 32, which are incorporated herein.

**REQUEST FOR PRODUCTION NO. 88:**  To the extent not previously requested, please produce the name, address, and job title for the employee and/or agent who was and is currently responsible for maintaining records for each of the previously described persons who hired Bryson Juriel Bowers.

**RESPONSE:**  Please see Response to Request No. 78, which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 89:**  Please produce the name, address, and job title for the employee(s) or agent(s) who is the corporate representative(s) for this litigation on your behalf in accordance with Fed. R. Civ. P. 30(b)(6) for the request for production herein, and matters of examination including your individual drivers' compliance and your compliance with state and Federal Motor Carrier Safety Regulations, your safety policies and procedures, document

retention, and the supervision and training of your drivers, supervisors, dispatchers and other employees discussed within the interrogatories and request for production of documents herein.

**RESPONSE:**  Please see Response to Request No. 78 which is incorporated herein.

**REQUEST FOR PRODUCTION NO. 90:**  Please produce complete and unredacted documents relating to payments by you or your insurance carrier for damages to Plaintiff's vehicle caused by the collision on September 14, 2018; towing, salvage and the present location of the Plaintiff's vehicle; all repair estimates, damage estimates or repair bills for Plaintiff's vehicles; and all digital photographs and videos of Plaintiff's vehicle in as high resolution as possible, along with all photographic prints if different from the digital photographs.

**RESPONSE:**  It is believed that plaintiff Rowan's insurer, Safeco Insurance, made payments for damage to the vehicle that Plaintiff was operating.  To the best of New Bern's knowledge, it does not have documents showing the present location of the Rowan vehicle and New Bern trusts that Plaintiff has made appropriate arrangements for the preservation of that vehicle and for the download of data from that vehicle.  Copies of the repair estimates/bills and related photos that New Bern has access to will be produced.

Respectfully submitted,

_____
Gregory T. Jones (83097)
Alexander T. Jones (2015246)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: gjones@wlj.com
           ajones@wlj.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On May 4, 2022, a copy of the foregoing was served via email on the

following:

Don P. Chaney
S. Taylor Chaney
Chaney Law Firm, PA
P.O. Box 1405
Arkadelphia, AR 71923
don@chaneylaw.com
taylor@chaneylaw.com

_____
Greg Jones

2529968-v1