IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TIFFANY ROWAN**                                                                           **PLAINTIFF**

**VS.**                   **NO. 4:21-CV-00911-KGB**

**PEPSICO, INC.,
NEW BERN TRANSPORT CORPORATION, and
BRYSON JURIEL BOWERS**                                       **DEFENDANTS**

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND FOR INTERIM PRETRIAL CONFERENCE

Defendants PepsiCo, Inc., New Bern Transport Corporation ("New Bern") and Bryson Juriel Bowers ("Bowers") (collectively, "Defendants") reply to plaintiff Tiffany Rowan's ("Plaintiff") Response to Defendants' Motion for Protective Order and for Interim Pretrial Conference and state:

Reduced to its essence, Plaintiff's position is: 1) Defendants' motion is untimely; 2) Defendants did not show the requisite good cause; and 3) entry of the protection order would run afoul of the "strong presumption in favor of the right of access to public court business." Plaintiff is wrong on all counts. Consequently, Defendants' Motion for protective order should be granted.

### Timeliness

In claiming that the motion is untimely, Plaintiff relies principally on two inapposite cases: *United States, v. International Business Machines Corporation*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976) and *Nestle Foods Corp. v. Aetna*, 129 F.R.D. 483,

487 (D.N.J 1990). Such reliance is ill-founded both as a legal matter as well as a factual one.

The ruling in *International Business Machines* stemmed from a hybrid fact pattern that has no similarity here. There, the entity seeking the protective order was not a party to the case. In the face of a subpoena, that non-party raised no objection before the compliance deadline. In fact, it sought the order *after* it had already produced the requested documents. Partly due to this reason, subsequent decisions–even within the Southern District of New York–have refused to apply *International Business Machines* outside its unique fact pattern. *See, e.g.*, *Dorsett v. County of Nassau,* 800 F. Supp.2d. 453, 460-61 (S.D.N.Y. 2011).

Plaintiff's reliance on *Nestle* fares no better. Magistrate Judge Wolfson in *Nestle* found defendant's motion for protective order was untimely. But that was mainly because Aetna had waited until two months *after* responding to the discovery before it "indicated for the first time its desire to obtain a protective order as a condition precedent to the production of its documents." 129 F.R.D. at 487.

Factual dissimilarly aside, both *International Business Machines* and *Nestle* lack persuasion force for a more fundamental reason. Both cases had apparently rested upon an earlier version of Rule 30(b), which (in its prior version) specifically required that protective orders requests be made "seasonably." But as the court noted in *Dorsett*, whereas the pre-1970 version of the federal rules required that such requests be made "seasonably," *as amended* Rule 26(c) made "no mention of a timeliness requirement for seeking a protective order." *Id.* at 460. Consequently,

Judge Spatt rejected any sort of bright-line rule.[1] Instead, the court correctly pointed out that the proper way to determine the issue was by applying conventional notions of waiver, which require an "intentional relinquishment or abandonment of a known right or privilege." *Id.* at 460-61

In the case at bar, Plaintiff cannot seriously contend that New Bern engaged in any such relinquishment or abandonment. Indeed, New Bern's responses to the pertinent interrogatories and request for production expressly raised the issue. After objecting on grounds of confidentiality or the proprietary nature of the requested information, New Bern *then* acknowledged that certain documents would be produced pursuant to protective order. *See* Appendix, *infra*.

Finally, it is noteworthy that during the parties' discovery conferences, Plaintiff never expressed any disagreement with the notion that a protective order would be sought, though Plaintiff understandably requested to review the proposed protective order. After New Bern provided that proposed order to Plaintiff, Plaintiff did not object that entry of a protective order was inappropriate (or had been waived). Rather, Plaintiff took exception with the form of the order that New Bern had submitted and proposed and ultimately filed an alternative protective order. *See* Dkt. No. 20-3. Had Plaintiff been serious about the waiver arguments, there would be no reason for Plaintiff to suggest an alternative order.

---

[1] And *Dorsett* also found that protective orders could still be available "even after documents had been produced." 800 F.2d at 461 (citing *Standard Inv. Chartered, Inc. v. Nat'l Assoc. of Securities Dealers*, 621 F.Supp.22 55 (S.D.N.Y.), *aff'd* 347 Fed.Appx. 615 (2d Cir. 2009); also citing *Peskoff v. Faber*, 230 F.R.D. 25, 33-34 (D.D.C. 2005)).

Thus, it appears that in reality, the pending controversy is akin to that in *Frazier v. Graves*, 2021 WL 4502150, *18 (E.D. Ark., Sept. 30, 2021). In *Frazier*, the Court observed that the parties "do not dispute that a protective order is appropriate," rather they mainly disagreed only as to its scope. Having recognized that, the Court entered an appropriate protective order. 2021 WL 4502150 at *19.

That is the appropriate course here. Defendants raised timely objections to the underlying discovery requests based on the confidential and proprietary nature of the information sought by the requests. But they also agreed that if a suitable protective order were entered they would provide many of the requested materials. That then precipitated a series of good faith discovery conferences in accordance with Fed. R. Civ. P. 26(c)(1) and Local Rule 7.2(g). While those conferences yielded little agreement, there was no waiver.

## **Good Cause**

Rule 26(c) confers "broad discretion on [this] court to decide when a protective order is appropriate and what degree of protection is required." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). "When dealing with sensitive or proprietary information, courts routinely grant protective orders that limit who may access the disclosed information and how the disclosed information may be used." *Murphy v. KMart Corp.*, 255 F.R.D. 497, 504 (D.S.D. 2009).

2806075-v1

This case is–or at least should be–relatively uncomplicated. Given the massive scope[2] and number of Plaintiff's discovery requests, Defendants entered into the above-referenced good-faith discussions with Plaintiff. Defendants had hoped that–after more than 4 hours of discussion—reason would prevail. But it did not. Outside of a few minor concessions,[3] Plaintiff was unwilling to agree to any substantive limitation on the scope of Plaintiff's interrogatories and document requests.

Now, despite recognizing that at least *some* form of protective order is appropriate, Plaintiff nonetheless still objects to Defendants' proposed protective order on grounds that Defendants did not adequately demonstrate good cause. It is true that in its motion Defendants provided no detailed briefing (Dkt. No. 19). But that is because the concept is so self-evident. Frankly, it never occurred to defense counsel that legal authority might be required to demonstrate that personnel files or company policies are worthy of protection. Indeed, in litigation in Arkansas (and elsewhere) protective orders covering such topics are routinely granted without extensive briefing without any objection from other parties. Frequently, such protective orders are *jointly* proposed by both sides. That has been the case in litigation before this very court. *See, e.g., Moss v. U.S. Xpress, Inc.,* Case No. 3:20-cv-00290-KGB (E.D. Ark., June 9, 2021) (granting Agreed Protective Order

---

[2] A sizeable number of Plaintiff's requests strain the concept of relevance even had Mr. Bowers been an over-the-road driver. Yet he was not. Instead, Mr. Bowers was exclusively a local delivery driver.
[3] For example, Plaintiff ultimately narrowed the request for shipping-related data given the fact that the vehicle was not being used as an over-the-road vehicle and thereupon limited her request in RFP 49 to data relating to the vehicle's weight.

regarding personnel records and company protocols in a trucking accident bodily injury case). *See* Exhibit 1, (Agreed Protective Order and Joint Motion for Protective Order in *Moss v. U.S. Xpress, Inc*, E.D. Ark. Case No. 3:20-cv-290-KGB).

But since Plaintiff now challenges this principle, it is noteworthy that when courts have felt *compelled* to state the obvious, they have properly noted that personnel records should normally be granted protected status. *See, e.g., Barella v. Village of Freeport,* 296 F.R.D. 102, 106-107 (E.D.N.Y. 2013) and *Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 72-73 (S.D.N.Y. 2010) (citing myriad cases granting protective orders for personnel files).

Courts in the Eastern District of Arkansas likewise routinely grant protective orders to limit unnecessary disclosure of proprietary commercial or sensitive personal information. Those interests are routinely found to constitute good cause under Fed. R. Civ. P. 26(c)(1). *See, e.g., Kincade v. Allstate Insurance Company*, 2014 WL 11498051 (E.D. Ark., July 15, 2014) (protecting company manuals). Good cause is routinely found for protecting individual privacy interests embedded within a party's commercial or proprietary records, for individual privacy interests are "implicit in the broad purpose and language of [Fed. R. Civ. P. 26(c)]." *Holmes v. Henry*, 2011 WL 5075012, *3 (E.D. Ark., Oct. 26, 2011) (quoting *Seattle Times*, 467 U.S. 20, at 35 n.21). Equally so for protection of proprietary trade secret or confidential commercial information, including driver safety and compliance manuals. *See Moh v. Rush Trucking Corp.*, 2012 WL 4450674, *2 (E.D. Ark., Sept.

6

25, 2012) (finding that protective order permitted discovery regarding trucking company's safety and compliance manual).

These many decisions are premised explicitly or implicitly on inherent privacy interests that emanate not only from federal and state constitutions but also from a variety of statutes that recognize the privacy rights that attach to many types of personnel-related data. *See, e.g.,* The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191, and The Americans with Disability Act, as well as from regulations specific to the trucking industry. *See, e.g.,* 49 C.F.R. §382.405(a) (sharply narrowing a motor carriers' disclosure of certain testing records of its drivers); 49 C.F.R. §391.53 (requiring motor carriers to limit access to records of its investigation into new/prospective drivers' safety performance history and even sharply limiting the company's own internal use of such data. And as stated by the United States Supreme Court, privacy rights are "implicit in the broad purpose and language of [Rule 26(c)]." *Seattle Times*, 467 U.S. at 35, n. 21.

In short, to the extent that Plaintiff claims that no good cause exists to protect the information she has requested from Defendants, extensive case law and statutory authority indicate otherwise.

### The Proposed Protective Order is Appropriate and Does Not Violate Public-Access Principles

Plaintiff also objects to the proposed protective order on grounds that it gives Defendants an untrammeled right to declare certain items protected. This argument is unsupportable. As an initial matter, a court always has the authority

7

to revise to revisit its rulings on protective orders. As one authority succinctly observes: "As long as a protective order remains in effect, the court that entered the order retains the power to modify it[.]" 6 *Moore's Fed. Prac.* § 26.106(1) (Matthew Bender 3d Ed.) (2022).

If, for example, the Plaintiff were to believe that a certain document that Defendants designated as "protected" should actually fall outside protected status, the solution is simple. Plaintiff can simply notify Defendant that it believes the document was improperly designated. If Defendants agree, the issue is resolved; if Defendants *disagree*, the Plaintiff could file a motion with the Court asking that the document be deemed to fall outside the protective order's scope. While Plaintiff implies that the proposed protective order somehow would prevent such a common-sense resolution of this theoretical problem, there is absolutely nothing in the proposed protective order that bars such a process.

Plaintiff also challenges the proposed protective order on grounds that its entry might in effect limit use of materials in other litigation. Plaintiff cites various cases for the proposition that exposure to litigation in other suits is not a good cause for entry of a protective order. That proposition may be true. But it is also not germane here, where the dispute centers on materials being produced and used during *discovery* versus materials actually introduced at trial.

What Plaintiff's response fails to recognize is the stark difference between evidence that is admitted in a public trial versus documents/evidence shared in the course of discovery. Public access to trial evidence does, indeed enjoy a virtual

8

presumptive right of public access. However, discovery materials are treated differently. And for good reason. The former is a foundation of the of established canons related to public access to trials. But there is no such presumptive access authorized for discovery.

As the Supreme Court pointed out in *Seattle Times*, "depositions and interrogatories are not public components of a civil trial." 467 U.S. at 33. "Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.; see also Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1312-13 (11th Cir. 2001) (explaining the different approaches depending upon whether a document is actually filed as part of the court record versus simply produced in discovery or in connection with discovery motions).[4]

---

[4] As one legal treatise explains:

> The presumption of access to discovery materials is also affected by the 2000 amendments to Rule 5(d). although it had become routine prior to the 2000 amendments not to file discovery materials, the rule nevertheless nominally required filing of discovery materials in the absence of a court order that discovery materials not be filed. Relying, in part, on this former version of Rule 5(d), which required filing at least in part for the purpose of allowing public access, some courts had found that discovery is presumptively open to public scrutiny unless a valid protective order directs otherwise. The 2000 amendments to Rule 5(d) create a general regime of non-filing of discovery materials. Thus, the current version of Rule 5(d)(1) undercuts that portion of the public access rationale that has been predicated on the notion that, even though discovery materials are no longer filed, the filing requirement still triggers application of the doctrine that documents required to be filed are presumptively available to the public. Courts have subsequently concluded that this amendment to Rule 5(d) eliminated any implied right of access to unfiled discovery.

6 *Moore's Fed. Prac.* §26.106[3][6] (footnotes omitted).

9
2806075-v1

In short, Plaintiff's concerns that entry of the protective order would violate pubic access rules or somehow improperly impact other litigation lack foundation. They should therefore be rejected.

## **Conclusion**

Motions for protective orders serve at least two different missions. One is to safeguard such interests as privacy. Another is to quell the tendencies toward "over-discovery" especially in cases that are relatively simple. As to the latter mission, the advisory committee's note accompanying the 1983 Amendment to Rule 26 pointed out, the new provisions were added to deal with the problem of over-discovery:

> The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse.

Fed. R. Civ. P. 26(c), advisory committee's note, 1983 Amendment.

The primary need for Defendants' motion was to secure a workable protective order that would protect confidentiality and proprietary interests in the documents that Plaintiff has demanded. But the motion also seeks to obtain court guidance over the course and extent of discovery in this case. Without such protection and guidance, progress in making this case trial-ready does not seem possible. For these reasons, Defendants' motion should be granted.

10
2806075-v1

Respectfully submitted,

Gregory T. Jones (83097)
Alexander T. Jones (2015246)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: gjones@wlj.com; ajones@wlj.com
*Attorneys for Defendants*

## **Appendix**

Discovery responses in which New Bern objected on confidentiality/privacy grounds but agreed to produce subject to a suitable protective order

Interrogatory No. 2. Seeking information on Bowers' arrests, tickets, license restrictions/suspensions, etc.

Interrogatory No. 3. Seeking health information (physical/mental impairments)

Interrogatory No. 16. Asking whether Bowers (and other company drivers) committed disqualifying commercial driving offenses in Arkansas during 8 years before the subject accident, including DUI (alcohol or drugs), refusing to undergo drug/alcohol testing, leaving the scene of a collision, or driving-related felony.

Request for Production No. 11. Seeking documents reflecting arrests, tickets, offense, violations, restrictions, suspension, refusals to renew, cancellations or revocations on Mr. Bowers' license.

Request for Production No. 12. Seeking results of drug tests administered to Mr. Bowers.

Request for Production No. 14. Seeking driving-related cautions, reprimands, suspensions, termination or other disciplinary actions against Mr. Bowers.

Request for Production No. 23. Seeking Driver Qualification Files, including employment applications, employment questionnaires, medical exams, drug/alcohol tests, medical cards, driving violation statements, road tests, written tests, and employment inquiries to other employers.

Request for Production No. 24. Seeking Mr. Bowers' personnel file.

Request for Production No. 25.  Seeking Mr. Bowers' DOT physical exam records.

Request for Production No. 26.  Seeking New Bern's company policies regarding hiring, background checks and documents relating to the hiring and termination of Mr. Bowers, as well as Mr. Bowers' motor vehicle record, his collision history and history of drug/alcohol usage, as well as Mr. Bowers' "driving experience and evaluation of his attitude and fitness.

Request for Production No. 45.  Seeking New Bern's company policies regarding out of service vehicles in general, and out of service records for the involved tractor trailer, specifically.

Request for Production No. 46.  Seeking New Bern's company policies on driver log auditing as well as all driver log audits for Mr. Bowers

Request for Production No. 53.  Seeking company policies on *inter alia* driver orientation, training, verification of training, route selection and collision reporting requirements.

Request for Production No. 54.  Seeking policies on *inter alia* driver license record checks, notifications to drivers on the results of checks, retraining requirements for moving violations.

Request for Production No. 56.  Seeking company retention policies on documentary retention and electronically retrieved data.

Request for Production No. 75.  Seeking personnel records for both Mr. Bowers and for his supervisor, including myriad personal information and past employment information.